[No. S122816. June 19, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
GREGORY ODELL HUDSON, Defendant and Appellant.

**COUNSEL**

Jeffrey A. Needelman, under appointment by the Supreme Court, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Joseph P. Lee, Jeffrey A. Hoskinson, Donald E. De Nicola, Jaime L. Fuster and Zee Rodriguez, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**KENNARD, J.**—A conviction of any of the offenses involving fleeing from a pursuing peace officer's motor vehicle requires, among other things, that the officer's vehicle be "distinctively marked." (Veh. Code, §§ 2800.1, subd. (a), 2800.2, subd. (a), 2800.3, subd. (a).) We granted review in this case to address two issues. First, what factors should be considered in determining whether a pursuing peace officer's motor vehicle is "distinctively marked"? Second, must a trial court on its own initiative define that statutory phrase?

We conclude that a peace officer's vehicle is distinctively marked if its outward appearance during the pursuit exhibits, in addition to a red light and a siren, one or more features that are reasonably visible to other drivers and distinguish it from vehicles not used for law enforcement so as to give reasonable notice to the person being pursued that the pursuit is by the police. We further conclude that a trial court must, on its own initiative, instruct the jury that the statutory phrase "distinctively marked" requires that, in addition to the red light and siren, the peace officer's vehicle must have features that distinguish it from vehicles not used for law enforcement, and that here the trial court's failure to so instruct the jury requires reversing the judgment of the Court of Appeal.

## I.

On the evening of January 4, 2002, Los Angeles Police Officers Andrew Buesa, who was in uniform, and Richard Ludwig were on patrol in a Ford Crown Victoria car near 54th Street and Wilton Place in Los Angeles. Officer Buesa, the driver, described the car as not a "marked vehicle" but "a plain car with forward-facing interior red light and a blue amber blinking light in the back." The red light was directly under the rearview mirror.

Just before 11:00 p.m., the two officers saw a man standing next to a parked car in which defendant was in the driver's seat. The man handed defendant money in exchange for an item wrapped in cellophane and, after looking towards the officers, ran away.

When defendant drove off, the two officers followed in their car. As defendant accelerated and turned right onto another street, Officer Buesa turned on his car's red light and the siren. When defendant pulled his car over to the side of the road, Buesa got out of his car and ordered defendant at least five times to get out of his car. Defendant, however, drove away. The officers again pursued defendant with the car's red light and siren on. During the pursuit, defendant ran two stop signs and a red light, causing another car to swerve suddenly to avoid a collision; at one point, Officer Buesa saw

defendant put his left arm outside the driver's window and crumble something in his hand. After additional police cars joined the pursuit, defendant turned into a shopping center and stopped.

A search of the car revealed some crumbled off-white solids later determined to be cocaine base; a bottle labeled "hydrochloride" (a "cutting agent" to increase the weight of cocaine); and white residue on an electronic scale, on the electronic buttons for the window and the locks, on the outside of the driver's side door, and on defendant's left hand.

Defendant was charged with transportation of a controlled substance (Health & Saf. Code, § 11352, subd. (a)), possession for sale of cocaine base (*id.*, § 11351.5), and attempting to elude a pursuing peace officer with willful disregard of the safety of persons or property (Veh. Code, § 2800.2, subd. (a)).[1]

The trial court gave a modified version of the standard jury instruction for the offenses of fleeing from, or attempting to elude, a pursuing peace officer's vehicle. (See CALJIC No. 12.85 (1999 rev.).) The modified instruction told the jury that the statutory "term 'distinctively marked' does not necessarily mean that the police vehicle must be marked with an insignia or logo," and it was for the jury "to determine whether the circumstances, which may include evidence of a siren or red lamp, [were] sufficient to inform any reasonable person that he was being pursued by a law enforcement vehicle."

The jury found defendant guilty as charged. The trial court sentenced him to imprisonment of four years for transporting a controlled substance, four years for possession for sale of cocaine base (the sentence was stayed under Penal Code section 654), and eight months for attempting to elude a police officer.

The Court of Appeal affirmed. We granted defendant's petition for review.

## II.

Section 2800.2 makes it a crime for a motorist to flee from, or attempt to elude, a pursuing peace officer's vehicle in "violation of Section 2800.1" and "in a willful or wanton disregard for the safety of persons or property." Under section 2800.1, a person who operates a motor vehicle "with the intent to evade, willfully flees or otherwise attempts to elude a pursuing peace officer's motor vehicle, is guilty of a misdemeanor . . . *if all of the following conditions exist*: [¶] (1) The peace officer's motor vehicle is

---

[1] All further statutory references are to the Vehicle Code unless otherwise indicated.

exhibiting at least one lighted red lamp visible from the front and the person either sees or reasonably should have seen the lamp. [¶] (2) The peace officer's motor vehicle is sounding a siren as may be reasonably necessary. [¶] (3) *The peace officer's motor vehicle is distinctively marked.* [¶] (4) The peace officer's motor vehicle is operated by a peace officer . . . wearing a distinctive uniform." (Italics added.) Thus, the statute requires four distinct elements, each of which must be present: (1) a red light, (2) a siren, (3) a distinctively marked vehicle, and (4) a peace officer in a distinctive uniform. (*Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985, 993 [73 Cal.Rptr.2d 682, 953 P.2d 858] [actual words of a statute cannot be ignored].)

Our Courts of Appeal have reached conflicting holdings on the meaning of the statutory requirement that the peace officer's vehicle be "distinctively marked."

In *People v. Estrella* (1995) 31 Cal.App.4th 716 [37 Cal.Rptr.2d 383] (*Estrella*), the Court of Appeal noted that subdivision (a)(3) of section 2800.1, which requires that a pursuing police car be distinctively marked, does not say that the marking must be in the form of any "insignia or logo." (*Estrella,* at p. 722.) The court acknowledged it "may reasonably be concluded that a vehicle is distinctively marked if it bears a symbol or device that identifies it as a peace officer's vehicle." (*Ibid.*) The court then pointed out that section 2800.1 already requires the vehicle to have a red light (subd. (a)(1)) and a siren (subd. (a)(2)). (*Estrella,* at pp. 722–723.) Thus, the *Estrella* court said, to determine when a pursuing peace officer's vehicle meets the statutory requirement of being "distinctively marked" one needs to look "at the indicia identified with the pursuit vehicle which are *supplemental* to a red light and siren, to ascertain whether a person fleeing is on reasonable notice that pursuit is by a peace officer." (*Id.* at p. 723, italics added.) Applying that test to the facts before it, the court concluded that because the pursuing officer's vehicle had a light bar on the windshield on the front passenger side, had warning lights in the rear, and had alternating headlights (called "wigwag" lights), in addition to a siren, the car had sufficient distinctive marks to satisfy the statutory requirement. (*Ibid.*)

In *People v. Mathews* (1998) 64 Cal.App.4th 485, 489–490 [75 Cal.Rptr.2d 289], the Court of Appeal followed the approach in *Estrella, supra,* 31 Cal.App.4th 716, concluding that a pursuing officer's vehicle equipped with red lights, siren, and with wigwag headlights was distinctively marked.

Thereafter, in *People v. Chicanti* (1999) 71 Cal.App.4th 956 [84 Cal.Rptr.2d 1] (*Chicanti*), the Court of Appeal disagreed with the holding of *Estrella, supra,* 31 Cal.App.4th at page 723, that indicia other than a red light and a siren were necessary to make a pursuing peace officer's vehicle "distinctively

marked" within the meaning of section 2800.1, subdivision (a)(3). (*Chicanti, supra,* 71 Cal.App.4th at p. 962.) In the view of the *Chicanti* court, the "appropriate test is whether there is substantial evidence in the record from which a reasonable trier of fact could conclude the red light and siren were sufficient 'distinctive markings to inform any reasonable person he was being pursued by a law enforcement vehicle.' " (*Ibid.*) Whether the pursuing police car is distinctively marked, the court said, depends on the totality of the circumstances. (*Ibid.*) In *People v. Shakhvaladyan* (2004) 117 Cal.App.4th 232, 237 [11 Cal.Rptr.3d 590], the Court of Appeal agreed with that holding, one that the Court of Appeal in this case also followed and that the Attorney General urges us to adopt.

Defendant, on the other hand, contends that a reading of section 2800.1 reveals that the pursuing police vehicle's outward appearance and features should be the basis for determining whether the vehicle meets the statutory requirement of being "distinctively marked."

To resolve the conflict in these two views, we apply basic principles of statutory construction to ascertain the legislative intent in using the phrase "distinctively marked." Because the language of a statute is generally the most reliable indicator of the Legislature's intent, we look first to the words of the statute, giving them their ordinary meaning and construing them in context. If the language is unambiguous, we presume the Legislature meant what it said, and the plain meaning of the statute controls. (*Fitch v. Select Products Co.* (2005) 36 Cal.4th 812, 818 [31 Cal.Rptr.3d 591, 115 P.3d 1233]; *People v. Braxton* (2004) 34 Cal.4th 798, 810 [22 Cal.Rptr.3d 46, 101 P.3d 994].)

The statute at issue requires "[t]he peace officer's motor *vehicle*" to be "distinctively marked." (§ 2800.1, subd. (a)(3), italics added.) As the statute unambiguously refers only to the vehicle itself, it cannot be construed as encompassing consideration of circumstances that have no relationship whatsoever to the vehicle's appearance. Yet, that is what the Court of Appeal here did. After noting the pursuing vehicle's particular features, such as a red light, a siren, blue and amber blinking lights, and pointing out that the vehicle was a Crown Victoria, "the same model used for black-and-white police cars," the Court of Appeal relied on the following circumstances of defendant's attempt to elude a pursuing police officer's vehicle: (1) defendant had reason to believe the police were chasing him because he had just committed the felonies of transporting a controlled substance and possessing cocaine base for sale; (2) defendant initially stopped after Officer Buesa activated the red light and siren; (3) Officer Buesa was wearing a police uniform; (4) defendant's consciousness of guilt as shown by his committing traffic violations and driving evasively during the pursuit; (5) the lengthy duration of the pursuit;

and (6) defendant's status of being a twice-convicted felon established his lack of credibility in insisting he did not know he was being pursued by a police car. The Court of Appeal then stated: "Even if we focused, not on the totality of the circumstances (upon which our holding rests), but on what Buesa's vehicle *itself* revealed (apart from its lengthy operation in pursuit of [defendant]), there was evidence that Buesa's vehicle (1) exhibited a lighted red lamp; (2) sounded a siren; (3) had a blue amber blinking light in the back; and (4) was a Crown Victoria, the same model used for black-and-white police cars." (Fn. omitted.)

Because the presence of a red light and a siren on a car are generally associated with police cars, not cars driven by ordinary citizens, one might conclude that these two distinguishing features by themselves would make the car displaying them "distinctively marked." Section 2800.1, however, requires the pursuing police vehicle not only to have a red light and a siren but also to be "distinctively marked." As we have noted earlier, preceding the list of the statutory requirements is the statement that "*all* of the following conditions exist." (§ 2800.1, subd. (a), italics added.) The stated conditions include a red light (§ 2800.1, subd. (a)(1)), a siren (§ 2800.1, subd. (a)(2)), *and* a "distinctively marked" vehicle (§ 2800.1, subd. (a)(3)). To conclude that the presence of a red light and a siren would satisfy the statutory requirement that the pursuing police car be "distinctively marked" would be inconsistent with the statutory requirement that *all* of its conditions be met, and it would render the phrase "distinctively marked" in subdivision (a)(3) of section 2800.1 mere surplusage. As we have stressed in the past, interpretations that render statutory terms meaningless as surplusage are to be avoided. (*Agnew v. State Bd. of Equalization* (1999) 21 Cal.4th 310, 330 [87 Cal.Rptr.2d 423, 981 P.2d 52]; *People v. Loeun* (1997) 17 Cal.4th 1, 9 [69 Cal.Rptr.2d 776, 947 P.2d 1313].)[2]

Thus, for purposes of section 2800.1, a pursuing peace officer's vehicle is "distinctively marked" if its outward appearance during the pursuit exhibits, *in addition to* a red light and a siren, one or more features that are reasonably visible to other drivers and distinguish it from vehicles not used

[2] The Legislature may have had a very good reason for requiring that the police vehicle be "distinctively marked" in addition to having a red light and a siren. As the Court of Appeal in *Estrella, supra,* 31 Cal.App.4th at page 723, footnote 4, pointed out: "Although the legislative history of section 2800.1 does not reflect the reason for the statute's requirement the vehicle be distinctively marked, it is not mere speculation to assume that the purpose is to protect the public at large and women in particular from being required to stop for anyone at night flashing a red light and sounding a siren. Indeed, in *People v. Chessman* (1959) 52 Cal.2d 467 [341 P.2d 679], defendant Chessman, who became known as the 'red-light bandit,' would flash a red spotlight on a car, and when the vehicle would yield, Chessman would rob and/or rape the driver."

for law enforcement so as to give reasonable notice to the fleeing motorist that the pursuit is by the police.[3]

## III.

As noted at the outset, defendant was charged with, among other things, violating section 2800.2, subdivision (a), attempting to elude a pursuing peace officer with willful disregard of the safety of persons or property. That statute incorporates by reference section 2800.1, subdivision (a), which requires the pursuing police car to be "distinctively marked." At trial, the prosecution proposed this instruction: "The term 'distinctively marked' does not require that the police vehicle be marked with some kind of insignia or logo. Rather, the test is whether a red light and siren are sufficient distinctive markings to inform any reasonable person he was being pursued by a law enforcement vehicle."

The trial court modified the proposed instruction as follows: "The term 'distinctively marked' does not necessarily mean that the police vehicle must be marked with an insignia or logo. The jury is to determine whether the circumstances, which may include evidence of a siren and red lamp, are sufficient to inform any reasonable person that he was being pursued by a law enforcement vehicle." The court then incorporated that modified definition of "distinctively marked" into the standard jury instruction defining the offense of attempting to elude a pursuing peace officer with willful disregard of the safety of persons or property. (See CALJIC No. 12.85 (1999 rev.).) Defense counsel objected to the modified part of the instruction on the ground that it left out the statutory requirement that the police vehicle be distinctively marked, but he did not offer an alternative instruction.

The Court of Appeal concluded that the statutory phrase "distinctively marked" was not a technical term peculiar to the law, and that defendant had forfeited his right to challenge the jury instruction at issue by failing to request clarification or amplification of the instruction. Defendant contends that the rule of forfeiture invoked by the Court of Appeal is inapplicable when the trial court has given a legally incorrect instruction. Defendant further argues that because the statutory phrase "distinctively marked" does have a technical meaning unique to the law at issue, the trial court had a duty to give, on its own initiative, a legally correct instruction. There is merit to both contentions.

██ Defendant's failure to request clarification or amplification of the instruction at issue does not result in a forfeiture of his challenge. "Generally,

---

[3] We disapprove *People v. Chicanti, supra,* 71 Cal.App.4th 956, and *People v. Shakhvaladyan, supra,* 117 Cal.App.4th 232, to the extent they are inconsistent with the views expressed here.

a party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language." (*People v. Andrews* (1989) 49 Cal.3d 200, 218 [260 Cal.Rptr. 583, 776 P.2d 285].) But that rule does not apply when, as here, the trial court gives an instruction that is an incorrect statement of the law. (*People v. Smithey* (1999) 20 Cal.4th 936, 976, fn. 7 [86 Cal.Rptr.2d 243, 978 P.2d 1171]; *People v. Frazer* (2003) 106 Cal.App.4th 1105, 1116, fn. 5 [131 Cal.Rptr.2d 319].) The challenged instruction was wrong in two respects. It allowed the jury to determine that the police car was distinctively marked based only on the car's having a red light and siren. It also embodied the view that the jury could consider circumstances other than the physical features of the pursuing police vehicle in determining whether the vehicle met the statutory requirement of being "distinctively marked." ■ Subdivision (a) of section 2800.1, however, requires physical features in addition to a red light and siren, and the statute limits the determination of whether a police vehicle is "distinctively marked" to the vehicle's outward appearance, without consideration of the totality of circumstances surrounding the defendant's criminal conduct that led to the police chase. Because the instruction given was wrong, the rule of forfeiture does not apply.

We now consider defendant's contention that the trial court had a duty, on its own initiative, to give a legally correct instruction.

■ "The rules governing a trial court's obligation to give jury instructions without request by either party are well established. 'Even in the absence of a request, a trial court must instruct on general principles of law that are . . . necessary to the jury's understanding of the case.' [Citations.] That obligation comes into play when a statutory term 'does not have a plain, unambiguous meaning,' has a 'particular and restricted meaning' [citation], or has a technical meaning peculiar to the law or an area of law [citation]." (*People v. Roberge* (2003) 29 Cal.4th 979, 988 [129 Cal.Rptr.2d 861, 62 P.3d 97].) "A word or phrase having a technical, legal meaning requiring clarification by the court is one that has a definition that *differs* from its nonlegal meaning." (*People v. Estrada* (1995) 11 Cal.4th 568, 574 [46 Cal.Rptr.2d 586, 904 P.2d 1197]; accord, *People v. Roberge, supra,* 29 Cal.4th at p. 988.)

In common parlance, the phrase "distinctively marked," when used to describe a police car, could include such distinguishing features as a red light or a siren. (See Webster's 3d New Internat. Dict. (2002) p. 659, col. 1; *id.,* p. 1382, col. 3.) Sections 2800.1, 2800.2, and 2800.3, however, require markings *in addition* to the presence of a red light and a siren, because, as we explained earlier, section 2800.1 expressly requires the peace officer's vehicle to have a red light (subd. (a)(1)), a siren (subd. (a)(2)), *and* to be distinctively

marked (subd. (a)(3)). In the statutory context at issue, therefore, the statutory phrase "distinctively marked" does carry a particular legal meaning that differs from its nonlegal meaning, in that it requires that the vehicle have a physical feature in addition to a red light and siren, thus requiring the trial court to instruct the jury, without the necessity of a request by either party, to clarify the meaning of the statutory term "distinctively marked." (See *People v. Enriquez* (1996) 42 Cal.App.4th 661, 665–666 [49 Cal.Rptr.2d 710] [term "under the influence" has particular legal meaning as used in section 23125, subdivision (a)]; *People v. Pitmon* (1985) 170 Cal.App.3d 38, 52 [216 Cal.Rptr. 221] [the word "force," as used in Penal Code section 288, subdivision (b), has specialized meaning].)

Accordingly, a trial court must tell the jury that in determining whether the statutory requirement that the pursuing police officer's vehicle be distinctively marked is met, it should consider the physical features of the vehicle itself that distinguish it from vehicles not used for law enforcement. To be distinctively marked, a vehicle must have, in addition to a red light and siren, one or more distinguishing physical features that are reasonably visible to other drivers during the pursuit. A trial court, however, need not instruct the jury that any particular form or specific type of mark is necessary. (See *Estrella, supra,* 31 Cal.App.4th at p. 722 [§ 2800.1 does not require distinctive mark to be in form of insignia or logo].)

Because the trial court here gave the jury an incorrect instruction defining the statutory term "distinctively marked," we next consider whether the error requires a reversal of the judgment.

### IV.

The statutory requirement that the pursuing peace officer's vehicle be distinctively marked is an element of the offense of evading a pursuing peace officer's vehicle. (§§ 2800.1, subd. (a), 2800.2, subd. (a), 2800.3.) In deciding whether a trial court's misinstruction on an element of an offense is prejudicial to the defendant, we ask whether it appears " ' "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." ' " (*People v. Hagen* (1998) 19 Cal.4th 652, 671 [80 Cal.Rptr.2d 24, 967 P.2d 563].) " 'To say that an error did not contribute to the verdict is . . . to find that error unimportant *in relation to everything else the jury considered on the issue in question, as revealed in the record.*' " (*People v. Harris* (1994) 9 Cal.4th 407, 426 [37 Cal.Rptr.2d 200, 886 P.2d 1193].)

Here, we cannot conclude that, beyond a reasonable doubt, the instructional error did not contribute to the jury's verdict. The instruction was wrong in two respects, both of which were prejudicial to defendant. First, the court's instruction, by advising the jury that the circumstances it could consider "may include evidence of a siren and red lamp," allowed the jury to determine that

the pursuing police car was distinctively marked based *only* on its red light and siren. As we have explained, however, to meet the statutory requirement of being distinctively marked a pursuing police vehicle must have distinguishing features *in addition to* a red light and siren. Second, the instruction was wrong because it allowed the jury, in determining whether the pursuing police car was distinctively marked, to consider any combination of circumstances that might be "sufficient to inform any reasonable person that he was being pursued by a law enforcement vehicle." But as we have explained, in determining whether the pursuing police vehicle is distinctively marked, a jury may consider *only* the distinguishing features of the vehicle itself that are reasonably visible to other drivers and serve to distinguish the vehicle from vehicles not used in law enforcement.

The instructional error prejudiced defendant because the jury could have found that the police vehicle here was not distinctively marked. The model of the car does not qualify as a distinctive mark because even if, as Officer Buesa testified, black-and-white police cars commonly are Ford Crown Victorias, there was no evidence at trial that this model was used exclusively by the police and not by other motorists. The blue amber lights might be a distinctive mark, but under the circumstances a jury could have determined that this feature was not reasonably visible to other drivers.

Defendant contends the record contains insufficient evidence that the pursuing police car was "distinctively marked" to support his conviction for violating subdivision (a) of section 2800.2, and that we should therefore bar the prosecution from retrying him for that offense. We disagree. Based on Officer Buesa's testimony, a properly instructed jury could reasonably have found that the car's "blue amber blinking lights" were reasonably visible to other drivers and distinguished the car from vehicles not used for law enforcement, and thus that the car was distinctively marked.

### Disposition

We reverse the judgment of the Court of Appeal insofar as it affirms defendant's conviction of violating Vehicle Code section 2800.2 and remand the matter to that court for further proceedings consistent with the views expressed here

George, C. J., Baxter, J., Werdegar, J., and Corrigan, J., concurred.

**MORENO, J.,** Dissenting.—The majority reverses defendant's conviction for evading a police officer because the trial court failed to instruct the jury, sua sponte, that it could not consider that the police vehicle was equipped

with a red light and siren in determining whether the vehicle was "distinctively marked" as required by Vehicle Code section 2800.2, subdivision (a).[1] I do not agree that the trial court erred. In my view the trial court was not required to instruct the jury on the meaning of the term "distinctively marked" because that term is in common parlance and was easily understood by the jury, and the jury properly could consider that the police vehicle was equipped with a red light and siren in determining whether it was "distinctively marked."

On the night of January 4, 2002, Los Angeles Police Officers Andrew Buesa and Richard Ludwig were on patrol in a gray Ford Crown Victoria "dual purpose" police vehicle equipped with a forward facing red light under the interior rearview mirror, a "blue amber blinking light in the back," and a siren. Ford Crown Victorias are the same make and model of automobile used for some black-and-white police cruisers. The officers turned a corner and saw defendant, who was seated in his vehicle, appear to sell drugs to a man standing next to the vehicle. The man standing outside defendant's vehicle noticed the officers' vehicle and immediately fled between some houses. The officers turned on the vehicle's emergency lights and defendant's vehicle sped away, accelerating so rapidly that its tires lost traction.

The officers pursued defendant's vehicle, turning on their siren, and defendant pulled his vehicle to the curb. Officer Buesa, who was in uniform, left his patrol vehicle and repeatedly ordered defendant to get out of his vehicle. Defendant ignored these orders and again drove away, accelerating rapidly. Defendant finally was apprehended after a high-speed chase involving several police vehicles, during which defendant almost collided with another vehicle and failed to stop for two stop signs and a red traffic signal. The officers found cocaine base and drug paraphernalia in defendant's vehicle.

In addition to drug offenses, defendant was charged with a felony violation of section 2800.2, subdivision (a), which prohibits fleeing or attempting to elude a peace officer in violation of section 2800.1 by driving a vehicle "in a willful or wanton disregard for the safety of persons or property." Section 2800.1 prohibits fleeing or attempting to elude a peace officer's vehicle if the vehicle (1) "is exhibiting at least one lighted red lamp visible from the front and the person either sees or reasonably should have seen the lamp," (2) "is sounding a siren as may be reasonably necessary," (3) "is distinctively marked," and (4) "is operated by a peace officer . . . wearing a distinctive uniform." (§ 2800.1, subd. (a); see § 2800.2, subd. (a).)

---

[1] All undesignated statutory references are to the Vehicle Code.

The trial court instructed the jury that a person violates section 2800.2, subdivision (a), only if he or she flees or attempts to evade a uniformed officer whose vehicle (1) "is exhibiting at least one lighted red lamp visible from the front, and the person either sees or reasonably should have seen the lamp," (2) "is sounding a siren as may be reasonably necessary," and (3) "is distinctively marked." The court further instructed the jury: "The term 'distinctively marked' does not necessarily mean that the police vehicle must be marked with an insignia or logo. The jury is to determine whether the circumstances, which may include evidence of a siren and red lamp, are sufficient to inform any reasonable person that he was being pursued by a law enforcement vehicle."

The jury convicted defendant of violating section 2800.2, subdivision (a), and the Court of Appeal affirmed the resulting judgment in an unpublished decision, but the majority in this court reverses the judgment on the ground that the jury instructions were inadequate. The majority holds that the trial court had a sua sponte duty to instruct the jury that "[t]o be distinctively marked, a vehicle must have, in addition to a red light and siren, one or more distinguishing physical features that are reasonably visible to other drivers during the pursuit." (Maj. opn., *ante*, at p. 1013, italics added.) I disagree.

The trial court did not have a sua sponte duty to define the statutory term "distinctively marked," because that term has a plain and unambiguous meaning that the jury could understand without further instructions. (*People v. Roberge* (2003) 29 Cal.4th 979, 988 [129 Cal.Rptr.2d 861, 62 P.3d 97].) The majority disagrees because it concludes that the term "distinctively marked" has a technical, legal meaning that differs from its common meaning, because "a peace officer's vehicle is distinctively marked if its outward appearance during the pursuit exhibits, in addition to a red light and a siren, one or more features that are reasonably visible to other drivers and distinguish it from vehicles not used for law enforcement so as to give reasonable notice to the person being pursued that the pursuit is by the police." (Maj. opn., *ante*, at p. 1006.)

The majority reasons that the circumstances that a police vehicle has a red light and siren must be disregarded in determining whether it is "distinctively marked" within the meaning of section 2800.1, subdivision (a)(3), because subdivision (a)(1) already requires the pursuing vehicle to exhibit a "lighted red lamp" and subdivision (a)(2) requires the police vehicle to sound a siren "as may be reasonably necessary." The majority reasons that permitting a jury to consider the use of a red light and siren in determining whether a police vehicle is distinctively marked would render "mere surplusage" the requirement that the vehicle is distinctively marked. (Maj. opn., *ante*, at p. 1010.) I disagree.

It is well established that "whenever possible, significance must be given to every word [in a statute] in pursuing the legislative purpose, and the court should avoid a construction that makes some words surplusage. [Citations.]" (*Agnew v. State Bd. of Equalization* (1999) 21 Cal.4th 310, 330 [87 Cal.Rptr.2d 423, 981 P.2d 52].) "Surplusage" is defined as "excessive or nonessential matter." (Webster's 9th New Collegiate Dict. (1990) p. 1188.) In *Agnew v. State Bd. of Equalization, supra,* 21 Cal.4th 310, 330, for example, we determined that the term "tax" does not include "interest," because such a construction would "render surplusage the word 'interest' in many of the statutes in which the Legislature has referred both to interest and tax."

Similarly, in *People v. Johnson* (2002) 28 Cal.4th 240, 243 [121 Cal.Rptr.2d 197, 47 P.3d 1064], we interpreted Penal Code section 288.5, which defines the crime of continuous sexual abuse of a child and expressly provides that " '[n]o other felony sex offense involving the same victim may be charged in the same proceeding with a charge under this section unless the other charged offense occurred outside the time period charged under this section or the other offense is charged in the alternative.' " We rejected the People's argument that multiple convictions of Penal Code section 288.5 and underlying specific sexual offenses occurring during the same period were permitted under Penal Code section 954, which permits a defendant to be convicted of "two or more different offenses connected together in their commission," because "[i]f section 954 permits multiple charges and convictions in the present circumstances, then the alternative charging language of subdivision (c) of section 288.5 is essentially rendered meaningless." (*People v. Johnson, supra,* at p. 247.)

We never have held, as does the majority in the present case, that the circumstance that the same evidence may, but does not always, establish two separate elements of an offense renders one of those elements surplusage.

In the present case, the requirement that a police vehicle must be distinctively marked can be satisfied, in part, by the same evidence used to establish the additional requirements that the vehicle exhibit a red lamp that is visible from the front and that the suspect reasonably should have seen, and sound a siren as reasonably necessary. This does not render any of these three separate requirements excessive or nonessential. If the requirement that the vehicle be distinctively marked was removed from the statute, a jury would automatically find that a defendant evaded a police officer if the vehicle exhibited a red light and sounded a siren as necessary. The addition of the requirement that the vehicle be distinctively marked means that the jury will find that the defendant evaded a police officer only if the jury determines, from the totality of the circumstances, including the red light and siren, that the vehicle was distinctively marked. Thus, the requirement that the vehicle

be distinctively marked is not surplusage or rendered meaningless because it permits the jury to find that the statute was not violated even if the vehicle exhibited a red light and sounded a siren.

This conclusion is supported by the decision in *People v. Chicanti* (1999) 71 Cal.App.4th 956 [84 Cal.Rptr.2d 1], in which the Court of Appeal considered and rejected the contrary reasoning in *People v. Estrella* (1995) 31 Cal.App.4th 716 [37 Cal.Rptr.2d 383], upon which the majority relies: "We respectfully disagree with the *Estrella* concern that the 'distinctively marked' requirement would be rendered 'mere surplusage' if the red lamp and siren could be used as the basis for a finding the vehicle was distinctively marked. The requirements are separate elements, and a reasonable trier of fact which found the red lamp was lighted and siren was on *may or may not* also conclude under the circumstances of a particular case that the red lamp and siren satisfy the distinctive marking element." (*People v. Chicanti, supra,* 71 Cal.App.4th at p. 962; see *People v. Shakhvaladyan* (2004) 117 Cal.App.4th 232, 237 [11 Cal.Rptr.3d 590].)

I might reach a different conclusion if multiple elements of an offense invariably were satisfied by the same evidence, but that is not the situation here. For example, a jury applying the statute in the present case might reasonably determine that a red sports car used as an undercover police vehicle that exhibited a red light and was equipped with a siren that it did not use was not distinctively marked within the meaning of the statute. Even if this hypothetical undercover red sports car sounded its siren in addition to exhibiting a red light, a jury still reasonably could find that the vehicle was not distinctively marked within the meaning of the statute. The court's jury instruction in the present case, after all, did not require the jury to find that the vehicle was distinctively marked if it exhibited a red light and sounded a siren as necessary; the instruction merely permitted the jury to consider these facts in determining "whether the circumstances . . . are sufficient to inform any reasonable person that he was being pursued by a law enforcement vehicle." I see nothing wrong with this instruction.

The jury in this case was instructed "to determine whether the circumstances, which may include evidence of a siren or red lamp," established that the vehicle was distinctively marked. The term "distinctively marked" is common parlance, and a jury easily can understand the term without the need for special instructions. The fact that the jury was permitted, but not required, to conclude, depending upon all of the circumstances, that a vehicle exhibit-

ing a red light and sounding a siren is distinctively marked, does not render any of those three requirements surplusage. In my view, the trial court's instruction was proper and defendant's conviction for evading a peace officer should be affirmed.

Chin, J., concurred.

Respondent's petition for a rehearing was denied August 23, 2006, and the opinion was modified to read as printed above. Corrigan, J., did not participate therein. Chin, J., and Moreno, J., were of the opinion that the petition should be granted.