Filed 5/27/14  P. v. Rodriguez CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>EDUARDO ALFREDO RODRIGUEZ,<br><br>    Defendant and Appellant. | 2d Crim. No. B248552<br>(Super. Ct. No. VA124544)<br>(Los Angeles County) |

        Eduardo Alfredo Rodriguez appeals the judgment entered after a jury convicted him of second degree murder (Pen. Code,[1] §§ 187, 189).  The trial court sentenced appellant to 15 years to life in state prison.  He contends the trial court gave an erroneous instruction on aiding and abetting liability.  We affirm.

### STATEMENT OF FACTS

        At about midnight on May 10, 2011, appellant and Eduardo "Dingo" Gonzalez were driving in an Isuzu Trooper in South Gate when they saw Guillermo Elisea.  Gonzalez fatally shot Elisea twice in the back and the Trooper sped away.

---

        **1** All further undesignated statutory references are to the Penal Code.

Several weeks later, the police went to Gonzalez's residence and recovered a .40-caliber pistol. Tests confirmed that expended casings and a bullet found at the scene of the shooting were fired from the pistol.

Following his arrest, appellant was placed in a cell along with two sheriff's deputies posing as inmates. In a recorded conversation that was played for the jury, appellant told the deputies he was riding with his "brother" Dingo when Dingo spotted Elisea standing in front of an apartment building. Dingo had been "hunting" Elisea due to a dispute over a woman. Dingo switched seats with appellant and shot Elisea multiple times in the back before appellant drove away. Appellant took the expended casings and flushed them down a toilet. He then parked the Trooper in Riverside on property owned by his girlfriend's brother. Appellant also said the police found the murder weapon when they searched Dingo's house.

The police subsequently found the Trooper where appellant said he had parked it.

## DISCUSSION

Appellant was prosecuted on the theory that he aided and abetted Elisea's murder by helping Gonzalez find Elisea and driving during and after the shooting. The jury was instructed on aiding and abetting liability in accordance with CALJIC No. 3.01 as follows: "A person aids and abets the commission or attempted commission of a crime when he: [¶] (1) With knowledge of the unlawful purpose of the perpetrator, and [¶] (2) With the intent or purpose of committing or encouraging or facilitating the commission of the crime, and [¶] (3) By act or advice, *or, by failing to act in a situation where a person has a legal duty to act,* aids, promotes, encourages or instigates the commission of the crime. [¶] A person who aids and abets the commission or attempted commission of a crime need not be present at the scene of the crime. [¶] Mere presence at the scene of a crime which does not itself assist the commission of the crime does not amount to aiding and abetting. [¶] Mere knowledge that a crime is being committed *and in the absence of a legal duty to take every step reasonably possible to prevent the crime,* the failure to prevent it does not amount to aiding and abetting." (Italics added.)

2

For the first time on appeal, appellant contends the trial court erred in failing to excise the italicized parts of the instruction because they are inapplicable to the case. He initially relies on the principle that "[i]t is error to give an instruction which, while correctly stating a principle of law, has no application to the facts of the case." (*People v. Guiton* (1993) 4 Cal.4th 1116, 1129 (*Guiton*).) He then asserts the instruction was legally incorrect in that it presented the jury with a legally invalid theory of guilt.

In anticipation of the People's forfeiture argument, appellant argues his claim can be addressed for the first time on appeal because the erroneous instruction affected his substantial rights and resulted in a violation of his federal constitutional rights to a fair trial, a jury trial, and due process. (See, e.g., *People v. Taylor* (2010) 48 Cal.4th 574, 630, fn. 13; *People v. Tully* (2012) 54 Cal.4th 952, 980, fn. 9.) If we deem the claim forfeited, appellant asks us to exercise our discretion to review it. (See *People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6.) Finally, appellant contends his trial attorney's failure to object to the instruction amounts to ineffective assistance of counsel. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 694.)

Appellant's assertion that the instruction presented the jury with a legally invalid theory of guilt can be raised for the first time on appeal. (*People v. Hudson* (2006) 38 Cal.4th 1002, 1012.) His argument that the instruction was *factually* invalid, however, is forfeited due to counsel's failure to object below. (See *People v. Frandsen* (2011) 196 Cal.App.4th 266, 278 (*Frandsen*).) As we shall explain, appellant's claim fails regardless of how the error is characterized.

No evidence was offered to support a finding that appellant had "a legal duty to act" or "a legal duty to take every step reasonably possible to prevent the crime," nor did the parties ever argue otherwise. Moreover, the jury was given no indication as to how it might determine whether a legal duty existed in this context. Appellant nevertheless claims the jury may have found "that appellant *did* have such a duty, perhaps as a general moral obligation to prevent harm to others." To agree with this assertion, we would have to conclude that the jury violated *its* duty to follow the instruction that it base its decision on the facts and the law, as provided in CALJIC No. 1.00. We would also

3

have to ignore the presumption that the jury heeded the instruction that it disregard any instruction if the evidence did not support its application. (*Frandsen, supra*, 196 Cal.App.4th at p. 278.)

As the People correctly note, "giving an irrelevant or inapplicable instruction is generally '"only a technical error which does not constitute ground for reversal."' [Citation.]" (*People v. Cross* (2008) 45 Cal.4th 58, 67.) Contrary to appellant's claim, the challenged instruction did not present the jury with a legally invalid theory of guilt. Following his logic, every conviction premised on the violation of a legal duty would be subject to reversal on the ground that the jury might have based its verdict upon a moral judgment rather than the facts and law.

The challenged instruction is a correct statement of the law, notwithstanding that it included a theory that did not apply to the instant case and which should not have been given. Even if it was error to give the instruction, we will affirm "unless a review of the entire record affirmatively demonstrates a reasonable probability that the jury in fact found the defendant guilty solely on the unsupported theory." (*Guiton, supra*, 4 Cal.4th at p. 1130; see also *People v. Watson* (1956) 46 Cal.2d 818, 836.)

As we have explained, no evidence or argument was offered to support a finding that appellant was guilty of aiding and abetting Elisea's murder on the theory that he violated a legal duty to act or refrain from acting in order to prevent the crime. Moreover, the evidence supporting a finding that appellant specifically intended to aid and abet the murder is overwhelming. The jury was presented with a recorded conversation in which appellant admitted he (1) accompanied Gonzalez in "hunting" Elisea; (2) changed seats with Gonzalez so that Gonzalez could shoot Elisea; (3) drove Gonzalez away from the scene of the crime; (4) disposed of the expended casings; and (5) hid the vehicle in which they were driving.

Appellant's argument that he was prejudiced by the jury instruction is unavailing. While an instruction on a legally invalid theory generally requires reversal, an instruction on a factually invalid theory requires reversal only if it is reasonably

4

probable that the jury's conviction is based *solely* on that theory. (*Guiton, supra*, 4 Cal.4th at p. 1130.) Where, as here, the latter type of error is present, our task is to determine whether it is reasonably probable that the jury conviction is based *solely* on the factually invalid theory. (*Ibid.*) Because *no* evidence was offered in support of the invalid theory, and the evidence supporting a finding of guilt on the valid theory was overwhelming, the error was harmless. It necessarily follows that trial counsel's failure to object to the instruction did not constitute ineffective assistance. (*Strickland v. Washington, supra,* 466 U.S. at p. 694 [defendant claiming ineffective assistance of counsel must show it is reasonably probable a more favorable result would have been achieved but for counsel's deficient performance].)

The judgment is affirmed.

NOT TO BE PUBLISHED.


PERREN, J.

We concur:


GILBERT, P. J.


YEGAN, J.


5

Michael Cowell, Judge

Superior Court County of Los Angeles

_____

Sharon Fleming, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, James William Bilderback II, Supervising Deputy Attorney General, Marc A. Kohm, Deputy Attorney General, for Plaintiff and Respondent.