Filed 5/26/15  P. v. Silliman CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yuba)

----

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>WILLIAM VINCENT SILLIMAN, JR.,<br><br>        Defendant and Appellant. | C072774<br><br>(Super. Ct. No. CRF1212) |

A jury convicted defendant William Vincent Silliman, Jr., of second degree murder and the trial court sentenced him to an indeterminate term of 20 years to life. Defendant now contends (1) the trial court should have instructed the jury on sudden quarrel/heat of passion, and (2) the trial court's instruction on the natural and probable consequences doctrine was inadequate.

1

Finding no instructional error, we will affirm the judgment.

BACKGROUND

Marcus Hume met a young woman named R.M. about a week after he was released from prison. R.M.'s mother told Hume that a man (the murder victim) had a sex tape of R.M. Hume, who later described the murder victim as a child molester, admitted that he was associated with a prison gang committed to victimizing child molesters in prison. Hume tried to persuade the murder victim to hand over the sex tape, but he failed and a fight ensued.

Hume had known defendant for about a year and sometimes slept in the spare room in defendant's apartment. Defendant, who was in the Air Force, kept several weapons in the apartment. Defendant admitted to police that he owned the murder weapon, a shotgun, and had helped Hume saw it off. Defendant also told police he knew Hume intended to use the sawed-off shotgun to kill a man. Hume denied saying he wanted to kill the victim, insisting he only wanted to beat him up. Hume's ultimate objective was to retrieve the sex tape.

On the day of the murder, R.M.'s sister, brother and two other young men gathered at defendant's apartment. Hume asked R.M.'s brother to "have his back" in a fight. The two other young men agreed to serve as lookouts. Hume told everyone he intended to "fuck up" the victim.

Defendant drove his white truck to the scene of the crime with Hume in the passenger seat and R.M.'s siblings in the back; the lookouts walked. Defendant saw the sawed-off shotgun in Hume's jacket. Defendant was armed with a knife. One of the lookouts testified that Hume said he just wanted to talk to the victim but would use the shotgun if the victim pulled out a gun. The lookout also said Hume intended to beat the victim "a little bit."

2

The victim's girlfriend testified that she received several calls from R.M.'s sister asking about the victim. The girlfriend called the victim and told him someone was looking for him. The victim said he suspected he was being set up.

As the victim drove up to his girlfriend's house with a passenger, defendant pulled his white truck alongside the victim's car. Defendant pulled his truck so close that the victim could not open his door. Hume testified he saw a pistol in the victim's lap. After a verbal exchange between Hume and the victim, defendant pulled forward but stopped when the victim started to get out of his car with a baseball bat. Hume and R.M.'s brother said they saw the victim pass a handgun to his passenger. A neighbor saw the passenger making motions she interpreted as loading a gun.

Hume reached into his sleeve, pulled out the sawed-off shotgun and fired. Buckshot hit the victim's face, neck and chest. A shot through the victim's eye was fatal. The victim's passenger fled on foot, telling the victim's girlfriend the victim was dead. A bloody bat was retrieved from beneath the victim's car.

At trial, Hume admitted to the shooting, saying the victim was advancing and could have hit him with the bat if he had taken one more step. A detective who interviewed Hume at the time of his arrest said Hume admitted to the shooting but did not say that he had been afraid and did not mention the victim having a bat or a gun. Hume said he was not offered any benefit in exchange for his testimony. Hume pleaded guilty to murder because he was "the trigger man" and he "couldn't beat the third strike."

The trial court instructed the jury on imperfect self-defense and on the liability of an aider and abettor for the natural and probable consequences of a crime. The jury found defendant guilty of second degree murder and also of being a principal in a crime where a firearm was discharged from a motor vehicle with specific intent to cause great bodily injury. (Pen. Code, §§ 187, subd. (a), 190, subd. (d).) The trial court sentenced defendant to an indeterminate term of 20 years to life.

3

DISCUSSION

I

Defendant contends the trial court should have instructed the jury on sudden quarrel/heat of passion, from which the jury might have concluded he was guilty only of voluntary manslaughter.

Defendant requested instructions on imperfect self-defense and on lesser included offenses for murder. The prosecution argued against the imperfect self-defense instruction because there was no evidence defendant was close enough to the victim to be hurt even if defendant had seen the victim with a weapon. The prosecution asserted that the imperfect self-defense instruction is available only to someone who actually feels threatened. The trial court said the jury should be able to find defendant guilty of manslaughter if it believed Hume's testimony.

CALJIC No. 8.40 provides in pertinent part:

"Every person who unlawfully kills another human being without malice aforethought but either with an intent to kill, or with conscious disregard for human life, is guilty of voluntary manslaughter in violation of Penal Code section 192, subdivision (a). [¶] There is no malice aforethought if the killing occurred [upon a sudden quarrel or heat of passion or] in the actual but unreasonable belief in the necessity to defend oneself or another person against imminent peril to life or great bodily injury."

During argument regarding instructions, the trial court read CALJIC No. 8.40. Reaching the bracketed phrase, the trial court said, "Strike 'sudden [quarrel or] heat of passion." Defense counsel said, "I have no objection to leaving it in there," but the prosecutor said the evidence supported only an unreasonable belief in the necessity for self defense. The trial court continued, "I'd be inclined to strike 'sudden quarrel, heat of passion' because that's [not] the type of voluntary manslaughter here being argued." Defendant said nothing. The jury was instructed based on CALJIC No. 8.40 and the bracketed phrase was omitted. The trial court distinguished between murder and

4

voluntary manslaughter in a related instruction based on CALJIC No. 8.50, again mentioning imperfect self-defense but not sudden quarrel or heat of passion.

Contrary to his position at trial, defendant now characterizes the verbal confrontation while the vehicles were parked side by side as "a sudden quarrel" and argues that voluntary manslaughter based on such a quarrel was a natural and probable consequence of the intended assault and/or robbery. He further argues that he had been driving away when the victim provoked the shooting by approaching the truck wielding a baseball bat. Accordingly, the jury should have been instructed that they could convict defendant of voluntary manslaughter based on the sudden quarrel.

Even without a request from counsel, with only a few exceptions not applicable here, a trial court must instruct a jury on every lesser-included offense or theory that is supported by the evidence. (*People v. Breverman* (1998) 19 Cal.4th 142, 153.) But no instruction is required in the absence of substantial evidence to support it. (*People v. Coddington* (2000) 23 Cal.4th 529, 591.) Failing to include an instruction is harmless error unless it is reasonably probable, based on all the evidence, that the defendant would have obtained a more favorable outcome if the instruction had been given. (*Breverman, supra*, 19 Cal.4th at pp. 177-178 [harmless error standard of *People v. Watson* (1956) 46 Cal.2d 818].)

A sudden quarrel/heat of passion instruction has both objective and subjective elements. (*People v. Kanawyer* (2003) 113 Cal.App.4th 1233, 1244.) The objective element requires objective proof of provocation by the victim to prevent a defendant from unreasonably justifying or excusing his homicidal conduct. (*Ibid*.) But a defendant's passion for revenge is not sufficient to support a voluntary manslaughter instruction. (*People v. Gutierrez* (2002) 28 Cal.4th 1083, 1144.)

Here, Hume sawed off a shotgun and told others about his plans to assault the victim, enlisting their help because he expected resistance. Although Hume may not have anticipated that the victim would get out of his car with a baseball bat, he and his

friends set up the confrontation anticipating violence. Being aroused to passion by an intended victim's predictable response to one's own provocation does not warrant a heat of passion instruction. (*People v. Jackson* (1980) 28 Cal.3d 264, 306 [victim screaming during burglary]; *People v. Rich* (1988) 45 Cal.3d 1036, 1111-1112 [rape victim resisting].) Thus, Hume would not have been entitled to a sudden quarrel/heat of passion instruction if he had been on trial. Because defendant intended to help Hume assault or rob the victim, he was not entitled to the instruction either.

Defendant cites *People v. Woods* (1992) 8 Cal.App.4th 1570, which held that an aider and abettor could be guilty of a crime less than the ultimate offense committed by the perpetrator, depending on what was reasonably foreseeable before the target crime. (*Id*. at p. 1591.) But the court in that case explained: "A trial court need not instruct on lesser offenses where there is no evidence the offense was less than that charged." (*Id*. at p. 1592.) Second degree murder involves intentional killing without premeditation. (See *id*. at p. 1593.) Even if Hume's primary goal was assault or robbery, the intentional killing was reasonably foreseeable. Defendant told police he heard Hume say he wanted to kill the victim. In addition, defendant knew Hume was carrying the shotgun.

There is insufficient evidence to support an instruction on sudden quarrel/heat of passion. The trial court did not err in omitting that language from the instruction.

## II

Defendant further contends the trial court's instruction on the natural and probable consequences doctrine was inadequate. He claims the trial court imposed an "all or nothing" choice on the jury by not mentioning voluntary manslaughter in the instruction about an aider or abettor's liability for murder under the natural and probable consequences doctrine.

The instruction as given was based on CALJIC No. 3.02. It said the jury could find defendant guilty of murder if the jurors were satisfied beyond a reasonable doubt that

6

the crimes of assault and/or robbery were committed or were attempted; that defendant aided and abetted those crimes; that a co-principal in that crime also committed the crime of murder; and that the murder was a natural and probable consequence of the commission or attempted commission of the assault and/or robbery.

As noted *ante*, the trial court instructed the jury on voluntary manslaughter. It also instructed generally that voluntary manslaughter is a lesser included offense of murder. Defendant admits he did not object to or ask for clarification of the aiding and abetting instruction. A party must raise an objection to an allegedly incomplete or inadequate instruction to allow the trial court to clarify or amplify it. (*People v. Hudson* (2006) 38 Cal.4th 1002, 1011-1012.) A contention is forfeited on appeal if the instruction was correct in law and responsive to the evidence, but not if the instruction was an incorrect statement of the law. (*Id*. at p. 1012.) In this case, as we have discussed, the instruction was responsive to the evidence. It was also correct on the law. Thus, defendant's contention is forfeited.

In any event, defendant's contention lacks merit. He argues that the instructions were incorrect because they did not allow the jury to conclude that voluntary manslaughter was a natural and probable consequence of assault or attempted robbery. He cites to the instructions in *People v. Ayala* (2010) 181 Cal.App.4th 1440. In that case, a jury was instructed that it could find defendant alternatively guilty of murder or manslaughter under the natural and probable consequences doctrine. (*Id*. at p. 1450.) But in that case there was mixed evidence about whether the defendant knew there was a gun in the car before the victim was shot. (*Id*. at p. 1451) In contrast, as we have pointed out, defendant admitted he owned the gun, helped Hume saw it off and watched Hume carry it with him for the express purpose of meeting up with the victim. *Ayala* is inapposite.

Defendant also cites *People v. Fiu* (2008) 165 Cal.App.4th 360, 376, but that case is also distinguishable. In *Fiu* there was evidence to support an instruction that allowed

7

the jury to alternatively find the defendant guilty of murder, attempted murder or manslaughter. (*Id.* at p. 376.) In this case, however, defendant's role was clear. He provided the murder weapon and drove the killer to a confrontation with the victim. As we have said, instructions on lesser offenses are required only when there is evidence to support them. (*People v. Woods, supra,* 8 Cal.App.4th at p. 1592.)

The trial court did not commit instructional error.

## DISPOSITION

The judgment is affirmed.



                                                      MAURO        , J.


We concur:


     HULL          , Acting P. J.


     DUARTE       , J.