Filed 2/27/26  P. v. Suarez CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSE ALFREDO SUAREZ,<br><br>    Defendant and Appellant. | D084412<br><br><br><br>(Super. Ct. No. 14858) |

APPEAL from an order of the Superior Court of Imperial County, Christopher J. Plourd, Judge.  Affirmed.

Steven S. Lubliner, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Charles C. Ragland, Chief Assistant Attorneys General, Arlene A. Sevidal, James M. Toohey and Andrew Mestman, Deputy Attorneys General, for Plaintiff and Respondent.

# I. INTRODUCTION

In 1992, a jury convicted Jose Alfredo Suarez of second degree murder and willful, deliberate, and premeditated attempted murder. In 2023, Suarez filed a petition for resentencing pursuant to Penal Code[1] section 1172.6. The trial court denied the petition at the prima facie stage. In his appeal from that order, Suarez argues that the instructions given at his trial allowed the jury to impute the perpetrator's malice to Suarez in both counts under an aiding and abetting theory. Suarez's attempted murder conviction was not based on the natural and probable consequences doctrine, making section 1172.6 inapplicable.

As for the second degree murder conviction, we have independently reviewed the 1992 trial transcripts that the trial court considered when ruling on the section 1172.6 petition. That record of conviction conclusively establishes that by its second degree murder verdict and a true finding on the personal knife use allegation, the jury determined that Suarez was the actual killer. This precludes Suarez from section 1172.6 relief. We therefore affirm the order denying Suarez's petition.

# II. BACKGROUND

In 1991, Suarez and several other men attacked Juan Favela, Rudy Hernandez, and Manuel Figueroa. All three victims suffered knife wounds, and Favela died from a single stab wound to his chest.

Investigating officers did not find the weapon that caused the victims' injuries. Footprints from the scene led to Suarez's home, where police officers discovered bloody clothing. Officers detained and questioned Suarez, subsequently releasing him from custody.

---

[1]     All undesignated section references are to the Penal Code.

Months later, law enforcement orchestrated a controlled drug transaction with Suarez. According to the confidential informant involved, Suarez admitted killing Favela. The confidential informant activated a concealed recording device, which captured Suarez reiterating and elaborating on his confession.

The District Attorney's Office of Imperial County charged Suarez with one count of murder (§ 187, subd. (a); count 1 [Favela]) and two counts of attempted willful, deliberate, and premediated murder (§§ 187, subd. (a), 664, subd. (a); count 2 [Figueroa] & count 3 [Hernandez]). Prosecutors alleged that Suarez personally used a deadly weapon (knife) in each count (§ 12022, subd. (b)).

At his 1992 trial, there was no percipient witness testimony that Suarez used a knife. The confidential informant testified, stating that Suarez confessed to killing Favela, as well as stabbing Figueroa and Hernandez. The jury also heard the recording of Suarez's statements to the confidential informant. Suarez's trial counsel asserted that Suarez's recorded statements were untrue, and that Suarez was merely attempting to protect himself by instilling fear in the confidential informant. The prosecutor told the jury that in addition to convicting Suarez as the actual killer, it could find him guilty as an aider and abettor even " 'even if you do not have any evidence about who held the knife.' "

The trial court instructed the jury on the following murder theories: willful, deliberate, and premeditated first degree murder; second degree murder based on express or implied malice; aiding and abetting; and willful, deliberate, and premeditated attempted murder. The trial court also informed the jury that use of a deadly weapon "means to display such a weapon in a[n intentionally] menacing manner or intentionally to strike or

3

hit a human being with it." The trial court did not instruct the jury on felony murder or natural and probable consequences.

The jury found Suarez guilty of second degree murder in count 1, assault with a deadly weapon as the lesser included offense in count 2, and attempted willful, deliberate, and premeditated murder in count 3. The jury also found true the personal knife use allegations in each count. The trial court sentenced Suarez to 15 years to life for count 1, four years for count 2, life with the possibility of parole for count 3, and one year for each of the deadly weapon enhancements. On direct appeal, this court struck the deadly weapon enhancement attached to the attempted murder count and otherwise affirmed the conviction. (*People v. Suarez* (May 27, 1994, D017631) [nonpub. opn.].)

In 2023, Suarez filed a petition for resentencing under section 1172.6 challenging his second degree and attempted murder convictions. The trial court appointed counsel for Suarez, who filed supplemental briefs arguing that the jury could have imputed malice to Suarez under an aiding and abetting theory.

The trial court heard the petition on June 25, 2024, stating it "read the entire file," including the opinion from Suarez's direct appeal and the trial transcripts. The trial court referenced the factual summary from the prior appellate opinion, quoted the portion describing Suarez's confession to the confidential informant, and found that to be the "critical evidence" in this case.

Arguing that aiding and abetting was a potential theory the jury used, Suarez's counsel stated, "nobody ever puts a knife in Mr. Suarez's hand. Nobody ever identified Mr. Suarez as a stabber." The trial court disagreed, stating that although Suarez contested the veracity of his statements to the

4

confidential informant, those statements were "what turned the jury" and led them to conclude that Suarez was the knife-wielder, he "specifically intended to kill," and "he's the actual killer." The trial court therefore concluded that Suarez failed to state a prima facie case for relief. Suarez's timely appeal followed.

## III. DISCUSSION

### A. Standard of Review

"When reviewing the denial of a petition for relief under section 1172.6, '[w]e independently review a trial court's determination on whether a petitioner has made a prima facie showing.'" (*People v. Burns* (2023) 95 Cal.App.5th 862, 866.) Additionally, despite the trial court's reasoning, "we may affirm a ruling that is correct in law on any ground." (*People v. Cortes* (2022) 75 Cal.App.5th 198, 204.)

### B. Section 1172.6

Effective January 1, 2019, the Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) The new law added subdivision (a)(3) to section 188, which states, "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3), added by Stats. 2018, ch. 1015, § 2.)

5

Senate Bill 1437 also created section 1172.6,[2] which authorizes those convicted of now-invalid murder theories to file a petition for resentencing. (Stats. 2018, ch. 1015, § 4.) At the initial hearing on the petition, the court determines if the petitioner has made a prima facie case for relief. (§ 1172.6, subds. (b)(3) & (c).) In this stage, " ' " 'the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.' " ' " (*People v. Curiel* (2023) 15 Cal.5th 433, 460 (*Curiel*).) If so, the court must issue an order to show cause and hold an evidentiary hearing. (§ 1172.6, subds. (c) & (d)(1).)

However, " '[i]f the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition.' " (*Curiel, supra,* 15 Cal.5th at p. 460.) For example, "[a] petitioner is ineligible for resentencing as a matter of law if the record of conviction conclusively establishes, with no factfinding, weighing of evidence, or credibility determinations, that . . . the petitioner was the actual killer, or . . . the petitioner acted with malice aforethought that was not imputed based solely on participation in a crime." (*People v. Lopez* (2022) 78 Cal.App.5th 1, 14.)

In this prima facie inquiry, the court may rely on the record of conviction, which includes "the trial evidence, the jury instructions, and closing arguments of counsel." (*People v. Lopez*, *supra*, 78 Cal.App.5th at p. 13.) Additionally, " '[w]e may look to the jury's verdicts, *and the factual findings they necessarily reflect.*' " (*People v. Morales* (2024) 102 Cal.App.5th 1120, 1131.)

---

[2] The initial statute was numbered section 1170.95, but in 2022 the Legislature changed it to 1172.6. (Stats. 2022, ch. 58, § 10.)

6

*C.	Suarez's Attempted Murder Conviction Does Not Qualify for Section 1172.6 Relief Because It Was Not Based on the Natural and Probable Consequences Doctrine*

Section 1172.6, subdivision (a), provides that "[a] person convicted of . . . , attempted murder under the natural and probable consequences doctrine, . . . may file a petition" for resentencing.  Accordingly, the statute " 'applies by its terms *only* to attempted murders based on the natural and probable consequences doctrine.' " (*People v. Lovejoy* (2024) 101 Cal.App.5th 860, 865; see also, *People v. Muhammad* (2024) 107 Cal.App.5th 268, 276.) Because this "language is unambiguous, we presume the Legislature meant what it said, and the plain meaning of the statute controls." (*People v. Hudson* (2006) 38 Cal.4th 1002, 1009.)

Even if we were to look beyond section 1172.6's plain language as Suarez asserts we must,[3] the result would be the same.  The purpose of Senate Bill 1437 was to eliminate murder liability for certain persons, including those who "did not act with the intent to kill." (Stats. 2018, ch. 1015, § 1, subd. (f).)  When not based on the natural and probable consequences doctrine, attempted murder requires an intent to kill for both perpetrators and aiders and abettors. (*People v. Richee* (2025) 111 Cal.App.5th 281, 293 [" '[a]ttempted murder requires the specific intent to kill' "]; *People v. Nguyen* (2015) 61 Cal.4th 1015, 1054 [" 'the person guilty of attempted murder as an aider and abettor must intend to kill' "].) Accordingly, the Legislature could not have intended a non-natural and

_____

3	Suarez's request for judicial notice of certain portions of Senate Bill No. 775's (2020–2021 Reg. Sess.) legislative history is granted.

7

probable consequence attempted murder to come within the ameliorative provisions of section 1172.6.[4]

Suarez's attempted murder conviction was not based on the natural and probable consequences doctrine. Accordingly, section 1172.6 does not provide any relief for that conviction, so the trial court properly denied Suarez's petition regarding that count.

D. *Suarez's Second Degree Murder Conviction Does Not Qualify for Section 1172.6 Relief Because the Jury Determined He Was the Actual Killer*

Suarez argues that the jury could have imputed malice to him in his second degree murder conviction under an aiding and abetting theory. He further contends that the true finding on the deadly weapon enhancement did not prove he directly perpetrated the murder because as instructed, the jury could have determined that he merely displayed the knife in a menacing manner. Finally, Suarez asserts the trial court improperly relied on the factual summary from this court's opinion in his direct appeal. We disagree.

First, "[s]ection 1172.6 allows the trial court to consider a prior appellate opinion as evidence of the procedural history of the case, but not as evidence of the facts in the case." (*People v. Carr* (2023) 90 Cal.App.5th 136, 139, fn. 2.) Here, the trial court referenced the factual summary from the prior appellate opinion, stating that Suarez's confession was the "critical evidence." "[L]ook[ing] at the entire record," the trial court stated that although Suarez contested his confession, "the confession is what turned the jury" and led them to conclude that Suarez was the actual killer. "[T]he

---

4     Suarez's reliance on *People v. Luu* (2025) 110 Cal.App.5th 1051, is likewise unconvincing. Although that case extended section 1172.6 relief to an attempted voluntary manslaughter conviction, which is not mentioned in the statute, that conviction was based on the natural and probable consequences doctrine. (*Id.* at pp. 1054–1055.)

entire record" referred to by the trial judge included the trial transcripts which included testimony by the confidential informant that Suarez twice admitted to murdering Favela. Taken together, this demonstrates to us that the trial court looked to the prior appellate opinion to ascertain what the jury determined, as opposed to using that opinion to make factual findings. Even if the trial court erred in this regard, "[o]ur task is to review the trial court's *ruling*, not its reasoning." (*People v. Turner* (2020) 10 Cal.5th 786, 807.) As explained below, the trial court's ruling was correct.

Second, although the trial court instructed Suarez's jury on aiding and abetting, the jury's verdicts and the factual findings they necessarily reflect establish that the jury did not rely on that theory. As Suarez acknowledged, there was no percipient witness testimony indicating that Suarez used a knife during the fight, whether by stabbing or a menacing display. Further, no weapons were found at the scene, precluding any link between Suarez and knife use through forensic evidence. However, Favela died from a single stab wound to the chest. As such, the sole evidence of Suarez's knife use was Suarez's statements to the confidential informant wherein he admitted killing Favela.

Under these circumstances, the only way for the jury to reach its true finding on the knife use allegation attached to the second degree murder count was to accept as true Suarez's statements to the confidential informant and determine that Suarez was the actual killer. Additionally, the only direct perpetrator murder theories given to Suarez's jury were express malice and implied malice, which remain valid under current law. (§ 188.) Accordingly, based on its personal knife use finding and the available evidence and theories for conviction, the jury necessarily determined that Suarez was the actual killer under currently valid theories of murder.

9

Suarez is therefore ineligible for section 1172.6 relief from his second degree murder conviction.

## IV. DISPOSITION

The order is affirmed.

RUBIN, J.

WE CONCUR:

IRION, Acting P. J.

DO, J.