Filed 7/16/15  P. v. McRay CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E060821 |
| v. | (Super.Ct.No. RIF1105973) |
| LARRY McCRAY, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Richard Todd Fields, Judge.  Affirmed.

Gary V. Crooks, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Michael Pulos, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant and defendant Larry McCray appeals from his conviction for attempted voluntary manslaughter, mayhem and assault with a deadly weapon. He contends that there is insufficient evidence to support the jury's finding that he did not act in self-defense; that the trial court erred in omitting certain language from the self-defense instructions; and that the court abused its discretion in denying his request to strike his strike prior.

We find no prejudicial error, and we will affirm the judgment.

PROCEDURAL HISTORY

By a first amended information, defendant was charged with attempted willful, deliberate and premeditated murder (Pen. Code, §§ 664, 187;[1] count 1); assault with a deadly weapon, a screwdriver (§ 245, subd. (a)(1); count 2); and mayhem (§ 203; count 3). In connection with count 2, the information alleged that defendant personally used a deadly or dangerous weapon, within the meaning of section 12022, subdivision (b)(1) and section 1192.7, subdivision (c)(23), and that he personally inflicted great bodily injury on the victim, within the meaning of section 12022.7, subdivision (a) and section 1192.7, subdivision (c)(8). The information also alleged that defendant had a prior conviction for criminal threats (§ 422), both as a serious prior offense within the meaning of section 667, subdivision (a), and as a special prior offense within the meaning of section 667, subdivisions (c) and (e)(1), and section 1170.12, subdivision (c)(1).

---

[1] All statutory citations are to the Penal Code unless another code is specified.

2

A jury convicted defendant of attempted voluntary manslaughter on count 1, as a lesser included offense of attempted murder. It convicted him on counts 2 and 3 as charged. It found true the allegation that defendant personally inflicted great bodily injury in the commission of count 2, and it found true that defendant personally used a deadly or dangerous weapon in the commission of the offense alleged in count 1 of the information, "or of the lesser offense of assault."[2] Defendant admitted the prior felony conviction allegations.

The court imposed a sentence of four years in state prison on count 3 (mayhem), and doubled it pursuant to section 667, subdivisions (c) and (e)(1), and section 1170.12, subdivision (c)(1). It imposed a consecutive term of five years pursuant to section 667, subdivision (a). The court stayed terms of two years each on counts 1 and 2, and stayed them pursuant to section 654. The court struck the personal weapon use enhancement pursuant to section 1385. It imposed a term of three years for the great bodily injury enhancement, and stayed it pursuant to section 654.

Defendant filed a timely notice of appeal.

---

[2] The first amended information did not allege personal use of a deadly or dangerous weapon in connection with count 1. The jury did not return a personal use finding as to count 2, which was alleged in the information. Accordingly, there does not appear to be a legal basis for the personal use finding. However, the court struck the enhancement in the interest of justice.

3

On December 21, 2011, around 5:10 p.m., Kory Harris rode his bike to the S&K Liquor Store in Perris. In the parking lot, he saw his friend Nigel Devine and another man. Devine was standing in a defensive posture, with his hands positioned as though he was "getting ready to block"; the other man had a screwdriver in his hand and was waving it around or poking it in a threatening manner. Harris parked his bike and went to the door of the liquor store and said to the clerk, "Hey, you might want to call somebody. Somebody's trying to stick Nigel with a screwdriver." When Harris turned back toward the parking lot about 20 seconds later, he saw Devine standing with blood squirting out of his head. The other man, whom Harris identified as defendant, was walking back to his truck. Harris saw him get into the truck and drive away.

When law enforcement arrived, Harris told them what he had seen and gave them a description of the truck and a few numbers from the license plate. Defendant was stopped a short while later, and Harris identified him in a field show-up. The screwdriver was recovered from inside the truck. The parties stipulated that blood on the blade of the screwdriver was Devine's.

During the incident, Harris heard defendant and Devine exchanging words but for the most part could not make out the words. He did not hear Devine utter any threats. He did hear defendant yell, "I'll [expletive] kill you." He did not see a weapon in Devine's hand or see him hit defendant, and Devine did not appear to be in a "fighting

4

mode," but rather in a defensive mode. Defendant seemed "really angry" and had a "weird" demeanor. He was talking in a "random" manner and acting "kind of crazy."[3]

Devine described the events as well, but as he repeatedly stated, he had suffered brain damage in the incident, which resulted in memory loss. He stated that he also lost most of the vision in his right eye as a result of the stabbing. Before the stabbing, he was already blind in his left eye. Because of his vision deficits, he was unable to identify anyone in the courtroom as his assailant. He had identified defendant at the preliminary hearing, but his vision had deteriorated since then.

Defendant testified that when he arrived at the liquor store, he took the screwdriver out of the truck because he needed to make an adjustment to the engine. As he got out of the truck, Devine approached him and said, "I'm going to kick your ass." Devine brushed against defendant and patted his pockets. Devine was with another man, who was wearing a trench coat. Defendant thought they were going to hurt him or rob him. Defendant said he was "a little concerned," but was more curious about what the two men were going to do. At some point, Devine shrugged his shoulders toward defendant as though to taunt him. At that point, defendant thought Devine was going to hit him. He was also angry because he thought Devine was taunting him. In response to Devine's movements, defendant "reflexed" and unintentionally stabbed Devine in the eye

---

[3] The trial court twice referred defendant for assessment of his competence to stand trial. He was found competent. However, at sentencing, the court noted that defendant had a long history of mental illness. The court held that even though defendant was competent to stand trial, his mental illness operated as a factor in mitigation of sentence. For that reason, the court imposed the middle term rather than the upper term, which the court felt would otherwise have been the appropriate sentence.

5

with the screwdriver. However, defendant admitted that when he is angry, he becomes violent. After he stabbed Devine, defendant pulled the screwdriver out of Devine's eye. He got into his truck and drove away.

When Devine arrived at the emergency hospital, a doctor determined that he had suffered a broken nose and broken bones around his eye sockets, as well as fractures in various parts of his skull. His right eye protruded from its socket. He had a large bruise behind his right eye which threatened the vision in his eye. He ultimately lost some or all of the vision in that eye. He had traumatic brain bleeding and a significant brain injury. He was very combative with staff during his hospitalization, but that is not uncommon with a traumatic injury.

Devine was known to local law enforcement as a person who got into frequent fights. He was trained as a boxer and in martial arts.[4] He also had a history of being drunk in public.

### LEGAL ANALYSIS

### 1.

### SUBSTANTIAL EVIDENCE SUPPORTS THE VERDICT

Defendant asserted that he was defending himself from Devine and the other man when he stabbed Devine. He now contends that the prosecution failed to meet its burden of proving beyond a reasonable doubt, with respect to all three offenses, that he was not acting in self-defense.

---

[4] There was no evidence that defendant was aware of Devine's propensity for fighting or his training in boxing and martial arts.

6

When the evidence raises the possibility that the defendant acted in self-defense or with another justification, the burden is on the prosecution to prove, beyond a reasonable doubt, that the defendant did not act in self-defense or with another legal justification. (*People v. Rios* (2000) 23 Cal.4th 450, 462; *Mullaney v. Wilbur* (1975) 421 U.S. 684, 684-685, 703-704.) Because the burden of proof as to self-defense is phrased in the negative—that the prosecution must prove that the defendant did not act in self-defense— defendant appears to believe that because there is evidence that supports his claim of self-defense, we must find that the evidence was insufficient to support a contrary finding. This is incorrect. Where there is conflicting evidence, some of which tends to show that the killing or attempted killing was justified and some of which tends to show that it was not, justification is a question for the jury: "[W]here the evidence is uncontroverted and establishes all of the elements for a finding of self-defense it may be held as a matter of law that the killing was justified; however, where some of the evidence tends to show a situation in which a killing may not be justified then the issue is a question of fact for the jury to determine. [Citation.] Where the evidence is uncontroverted, but reasonable persons could differ on whether the resort to force was justified or whether the force resorted to was excessive, then the issue is a question of fact for the trier of fact. [Citations.]" (*People v. Clark* (1982) 130 Cal.App.3d 371, 379, abrogated on another point by *People v. Blakeley* (2000) 23 Cal.4th 82, 92.) Here, although there may have been some evidence that defendant acted in self-defense, we review the jury's contrary finding under the substantial evidence standard: We view the evidence in the light most favorable to the judgment and determine whether it discloses evidence that is reasonable,

credible and of solid value, such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Guerra* (2006) 37 Cal.4th 1067, 1129.) We presume the existence of every fact the trier could reasonably deduce from the evidence. (*Ibid*.) We do not reweigh evidence or evaluate the credibility of witnesses, and we resolve all conflicts in the evidence in favor of the judgment. (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

Defendant described Devine threatening to "kick [his] ass" and brushing against him and patting his clothing as though to see if he had a wallet, while a man in a trench coat loitered nearby. However, although he was "a little concerned" about Devine's threat to kick his ass, he was not really afraid when Devine followed him toward the store. He was not really concerned about Devine at that point because "after [Devine] did what he did, he acted like he was through." Defendant had shifted his attention to the other man, who was a little distance away. When defendant turned back to Devine, Devine looked like he was about to throw a punch. It was reflex that caused him to stab at Devine. He did not intentionally stab him, and did not aim for his eye. This evidence was contradicted by other testimony. Harris, who saw only defendant and Devine in the parking lot, testified that in the seconds just before defendant stabbed Devine, defendant was the aggressor, yelling that he was going to kill Devine and "slashing" the screwdriver at him, while Devine stood in a defensive posture. Devine also denied having acted aggressively toward defendant or having threatened him. The testimony of Harris and Devine, if believed by the jury, is sufficient evidence to support a finding that defendant did not act in self-defense. It is solely within the province of the jury to resolve conflicts

8

in the evidence and to determine what evidence has greater credibility or persuasive force.  (*People v. Young*, *supra*, 34 Cal.4th at p. 1181.)  Accordingly, even if defendant's testimony was sufficient to support a finding that he acted in the reasonable belief in the need to defend himself and used a reasonable amount of force in light of the perceived threat, the jury was not compelled to accept it.  (*Ibid.*)  For these reasons, defendant's argument fails.

2.

INSTRUCTIONAL ERROR

### A.  Antecedent Threats

The court instructed the jury with both CALCRIM 505, entitled "Justifiable Homicide:  Self-defense or Defense of Another," and CALCRIM 3470, entitled "Right to Self-Defense or Defense of Another (Non-Homicide)."  Both instructions include an optional paragraph which states:  "[If you find that <insert name of decedent/victim> threatened or harmed the defendant [or others] in the past, you may consider that information in deciding whether the defendant's conduct and beliefs were reasonable.]"  Both instructions also include the following optional paragraph:  "[Someone who has been threatened or harmed by a person in the past, is justified in acting more quickly or taking greater self-defense measures against that person.]"  The instructions as given did not include those paragraphs.  Defendant did not request that those paragraphs be included in the instructions.  He now contends that the court had a sua sponte duty to include them.

9

A court's duty to instruct on antecedent threats was addressed in *People v. Garvin* (2003) 110 Cal.App.4th 484 (*Garvin*). There, the court said, "'""It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case.' [Citation.]"'" [Citation.] The court has a sua sponte duty to instruct on defenses when "'"it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case."'" [Citation.] Yet this duty is limited: 'the trial court cannot be required to anticipate every possible theory that may fit the facts of the case before it and instruct the jury accordingly. [Citation.] Thus, the court is required to instruct sua sponte only on general principles which are necessary for the jury's understanding of the case. It need not instruct on specific points or special theories which might be applicable to a particular case, absent a request for such an instruction.' [Citations.] Alternatively expressed, '[i]f an instruction relates "particular facts to the elements of the offense charged," it is a pinpoint instruction and the court does not have a sua sponte duty to instruct.' [Citation.] For example, our Supreme Court has recently held there is no sua sponte obligation to instruct on after-formed intent. [Citation.]

"Defendant offers no reasons supporting imposition of a sua sponte instructional duty other than that the rule concerning antecedent threats is not a recent, 'abstruse, underdeveloped theory of law' and that such an instruction is supported by the evidence. We are not convinced. The trial court was obligated to instruct on the basic principles of self-defense. It satisfied this duty by giving the standard CALJIC instructions on this topic. These instructions are legally correct and the concept of antecedent assaults is fully consistent with the general principles that are expressed therein. [Citation.] The issue of the effect of antecedent assaults against defendant on the reasonableness of defendant's timing and degree of force highlights a particular aspect of this defense and relates it to a particular piece of evidence. An instruction on the topic of antecedent assaults is analogous to a clarifying instruction. It is axiomatic that '[a] defendant who believes that an instruction requires clarification must request it.' [Citation.] Therefore, we conclude that this is a specific point and is not a general principle of law; the trial court was not obligated to instruct on this issue absent request." (*People v. Garvin*, *supra*, 110 Cal.App.4th at pp. 488-489.) We agree with this analysis. Accordingly, the court in this case had no sua sponte duty to instruct on antecedent threat.

We also reject defendant's contention that his attorney's failure to request inclusion of the antecedent threat language in the instructions constituted ineffective assistance of counsel. "'Reviewing courts defer to counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel [citation], and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."' [Citations.] '[W]e accord great deference to counsel's tactical decisions'

11

[citation], and we have explained that 'courts should not second-guess reasonable, if difficult, tactical decisions in the harsh light of hindsight' [citation]. 'Tactical errors are generally not deemed reversible, and counsel's decisionmaking must be evaluated in the context of the available facts.' [Citation.] [¶] In the usual case, where counsel's trial tactics or strategic reasons for challenged decisions do not appear on the record, we will not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions. ([Citation]; see also *People v. Fosselman* (1983) 33 Cal.3d 572, 581 [on appeal, a conviction will be reversed on the ground of ineffective assistance of counsel 'only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for his act or omission'].)" (*People v. Weaver* (2001) 26 Cal.4th 876, 925-926.)

Here, the record on appeal does not affirmatively disclose that counsel had no rational tactical purpose for failing to request the omitted language. On the contrary, it clearly discloses that the defense was not relying on antecedent threats as a justification for defendant's use of force. On direct, defendant testified that when he thought Devine was going to hit him, he "reflexed" and because they were standing so close to each other, the screwdriver went into Devine's eye. On cross-examination, he said he was "a little concerned" about Devine's threat to "kick [his] ass," but that he was not really afraid while Devine followed him toward the store. He was not really concerned about Devine at that point because "after [Devine] did what he did, he acted like he was through." Defendant had shifted his attention to the other man, who was a little distance away. When defendant turned back to Devine, Devine looked like he was about to throw

12

a punch.  It was reflex that caused him to stab at Devine.  He did not intentionally stab him, and did not aim for his eye.  In effect, defendant said, the stabbing was accidental.[5]  The instruction on antecedent threat directly contradicts defendant's testimony and his theory of the case.  Accordingly, it would have served no tactical purpose for counsel to have requested the omitted language.

### B.  Unlawful Touching

Defendant also contends that it was error to fail to define "unlawful touching," even though the phrase was used twice in the self-defense instruction given in connection with the nonhomicide offenses.  That instruction included the following language:  "The defendant is not guilty [of the crimes alleged] if he used force against the other person in lawful self-defense.  The defendant acted in lawful self-defense if:  [¶]  1.  The defendant reasonably believed that he was in imminent danger of suffering bodily injury or was in imminent danger of being touched unlawfully . . . ."  CALCRIM 3470 defines "unlawful touching" as follows:  "The slightest touching can be unlawful if it is done in a rude or angry way.  Making contact with another person, including through his or her clothing, is enough.  The touching does not have to cause pain or injury of any kind."  Here, the trial court omitted that portion of the instruction.

---

[5]  The court did instruct on accident.

In his opening brief, defendant merely makes the assertion that definition was required but does not develop any argument or cite any authority in connection with this assertion, nor does he argue how the omission was prejudicial. In his reply brief, however, he amplifies his contention. There, defendant acknowledges that the evidence most forcefully supported a finding that he reasonably feared that Devine, a trained fighter who was acting aggressively toward him and had his fists up as though he was about to hit defendant.**6** He acknowledges that the jury would most likely have understood the instruction to refer to defendant's belief that he was about to suffer bodily injury from being punched. However, he contends, if the court had defined "unlawful touching," the jury could have found that defendant reasonably feared an unlawful touching similar to what Devine had done earlier, by brushing defendant and patting him to see if he had any money.

Defendant is correct that those actions could have been found to be an unlawful touching. He is also correct that "unlawful touching" is a legal term which required definition. (See, e.g., *People v. Hudson* (2006) 38 Cal.4th 1002, 1011-1012.) However, a defendant is allowed to use only reasonable force, i.e., the amount of force a reasonable person would consider necessary to defend himself from the particular threat the person feared. (*People v. Minifie* (1996) 13 Cal.4th 1055, 1065.) The use of fists does not ordinarily justify the use of a deadly weapon in response. (*People v. Enriquez* (1977) 19 Cal.3d 221, 228 [there is a "limitation on the amount of retaliatory force which may be

---

**6** There was no evidence that defendant knew Devine was a trained fighter.

14

used against an assault with fists. Such an assault does not justify the use of a deadly weapon in self-defense"], overruled on another ground in *People v. Cromer* (2001) 24 Cal.4th 889, 898.) A fortiori, a rude or angry unlawful touching which falls short of the use of fists cannot justify the use of a deadly weapon. Because the evidence does not support a finding of self-defense based on a fear of an unlawful touching, it was not error to omit the definition of "unlawful touching." For the same reason, counsel's failure to request a definition did not constitute ineffective assistance.

3.

THE COURT DID NOT ABUSE ITS DISCRETION IN DENYING

DEFENDANT'S *ROMERO* MOTION

Defendant admitted a serious prior felony conviction for criminal threats. (§ 422.) Before sentencing, he submitted an invitation to the court to strike the prior conviction for sentencing purposes, pursuant to section 1385 and *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 504 (*Romero*). The court discussed the various factors it weighed in considering whether to strike the prior conviction and concluded that defendant fell within the spirit of the three strikes law. The court denied the request. Defendant now contends that this was an abuse of discretion.

In *People v. Williams* (1998) 17 Cal.4th 148, the California Supreme Court held, "[I]n ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law, on its own motion, 'in furtherance of justice' pursuant to Penal Code section 1385(a), or in reviewing such a ruling, the court in question must consider whether, in light of the nature and circumstances of his present

15

felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the [three strike] scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Id.* at p. 161.) When a trial court decides not to strike a strike prior, we review the decision "under the deferential abuse of discretion standard." (*People v. Carmony* (2004) 33 Cal.4th 367, 374.) Under that standard, "we are guided by two fundamental precepts. First, '"[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve the legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review."' [Citations.] Second, a '"decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.'"' [Citation.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at pp. 376-377.)

Here, defendant has not shown that the trial court's denial of his request was irrational or arbitrary. The trial court considered the nature of the present offense, saying, "There's no way to express the Court's sense of how violent this particular crime was. And I have heard many, many cases over many years, and it just, short of killing somebody, it really doesn't get more violent. I don't know that I've heard too many

16

cases where I heard the person jammed a screwdriver through somebody's eye, right there in the eye, breaking multiple bones, entering—literally, fracturing the skull, going into the brain, causing a loss of vision. There's no way to understate [*sic*] the extraordinary violent nature of this crime." This view of the nature of the current offenses is entirely supported by the record.

Next, the court considered defendant's prior offenses. Defendant's strike prior, for criminal threats (§ 422), involved a threat to kill a family member. A prior conviction for vandalism involved defendant going to a neighbor's house with a knife to confront someone. Defendant also has a prior conviction for possession of an assault weapon and brandishing a weapon, and one for throwing an object at a car with the intent to cause great bodily injury. These convictions all occurred between 2001 and 2008 and were interspersed with periods of incarceration and hospitalization. The court considered defendant's mental health problems, which were described in the probation report. However, the court found that despite having an opportunity for treatment—of which defendant did not regularly avail himself—defendant "remains extraordinarily violent." The court found that because of the past and current violent offenses, defendant "falls right within the meaning of the three-strikes law" and is precisely the kind of person the Legislature wanted off the streets.

Defendant contends that it was an abuse of discretion for the court not to find that his mental illness, which causes him to commit crimes, takes him out of the spirit of the three strikes law. Citing the probation report, defendant explains that he is a 60-year-old man who served in the Army beginning in 1974 but was honorably discharged in 1975

17

after being diagnosed with paranoid schizophrenia. He received treatment for nearly 20 years, but stopped seeking treatment in 1998 because of a divorce. Since then, despite his illness, he was able to remain employed until he "retired" in 1999, and did not begin committing crimes until 2001. The probation report states that his criminal history derives from his mental illness and that the court had found him legally incompetent on two occasions and ordered him hospitalized at Patton State Hospital for treatment. He states that according to two mental health experts, he is a paranoid schizophrenic who would benefit from regular and continuous treatment with antipsychotic medication. He was found incompetent by the court and hospitalized at Patton State Hospital and Metropolitan State Hospital.

What defendant ignores, however, is the probation officer's report that even though defendant is aware that the medication helped him and prevented him from getting into trouble with the law, he had not consistently taken his medication. Moreover, defendant has for years apparently attempted to self-medicate with marijuana, cocaine, methamphetamine and alcohol, but denies that he has a drug or alcohol problem.

Defendant does not cite any authority—nor are we aware of any—that suggests that a court should grant a *Romero* motion where the defendant makes a showing that mental illness played some role in his criminal history. In fact, in *People v. Carrasco* (2008) 163 Cal.App.4th 978, where the defendant's *Romero* motion was based on the fact that he had "'significant mental health history and issues'" and was "suffering from the effects of long-term drug use" (*id*. at p. 992), the Court of Appeal rejected the defendant's claim that "the [trial] court erroneously found it lacked authority to consider [his] mental

18

condition as a factor." (*Id.* at p. 993.) In denying the motion, the trial court commented that case law did not authorize consideration of the defendant's "'mental state, his mental condition, the reasons why he wanted to do these things.'" (*Id.* at p. 993.) The appellate court explained, "The record reflects the trial court considered a wide range of appropriate factors in passing sentence, particularly the nature and circumstances of appellant's present and past convictions." (*Ibid.*) Since the trial court had expressly considered the defendant's "background and character in ruling on the motion," its remarks about his mental condition amounted to "an acknowledgement that the court could not give undue weight to an inherently speculative argument that defendant's mental state 'made him do it.'" (*Id.* at pp. 993–994.)

Here, the court took defendant's history of mental illness into consideration, along with his criminal history, in reaching its conclusion that defendant remains extraordinarily violent despite the opportunity for treatment. Where a court has taken the defendant's background, the nature of his present offenses, and other individualized considerations into account (*Romero*, *supra*, 13 Cal.4th at pp. 530–531), we cannot say that it abused its discretion unless its conclusion was irrational or arbitrary. (*People v. Carmony*, *supra*, 33 Cal.4th at p. 377.) The court did consider the appropriate factors, and its conclusion was neither irrational nor arbitrary. Accordingly, it acted within its discretion in denying defendant's *Romero* motion.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER

Acting P. J.

We concur:

KING

J.

MILLER

J.