[No. B119988. Second Dist., Div. Five. Apr. 28, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
ANTONIO CHICANTI, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part III.B of the Discussion.

**COUNSEL**

John H. Hobson for Defendant and Appellant.

Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Susan D. Martynec and Arthur H. Auerbach, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

## KRIEGLER, J.*—

### I. INTRODUCTION

Defendant Antonio Chicanti was convicted by jury in counts 1 and 2 of robbery, in violation of Penal Code section 211, and in count 3 of felony evading an officer, in violation of Vehicle Code section 2800.2, subdivision (a). The jury found that a principal in the commission of the robberies in counts 1 and 2 was armed with a firearm within the meaning of Penal Code section 12022, subdivision (a)(1). The court sentenced defendant to the high term of five years in count 1, plus a one-year enhancement for the principal armed with a firearm allegation. Consecutive sentences were imposed in count 2 for one year, and in count 3 for eight months, resulting in a total sentence of seven years, eight months in prison.

Defendant raises two issues on appeal. First, he contends the evidence is insufficient to support the conviction in count 3 for felony evading an officer because the police car in pursuit was not distinctively marked as required by Vehicle Code section 2800.2, subdivision (a). Second, defendant contends the consecutive sentences in counts 2 and 3 were imposed in violation of the California Rules of Court.

### II. FACTS

#### A. *Prosecution Evidence*

Jewelry salesmen Vora Paresh and Ileshkumar Joshi were returning in Joshi's car to their business in Los Angeles from Fullerton on September 5, 1997. As they reached the 4th Street exit to the 101 freeway a white car containing five or six male Hispanics cut them off, forcing Joshi's car to a stop. Joshi tried to back up, but was unable to do so because a red car containing a male and female Hispanic pulled in behind him.

Five or six of the occupants of the cars approached Paresh and Joshi, who were in their car with the doors locked and the windows up. The windows to both the driver's and passenger's sides were broken. With guns pointed at their heads, Paresh and Joshi were robbed of diamonds they each kept in pouches in their waistbands.

Los Angeles Police Officer Clifford Humphris was working in the area above the freeway exit at 4th Street. He heard yelling from the freeway, and

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

observed the two cars blocking the jewelers' car. After witnessing the robberies, Humphris saw both of the assailants' cars drive away on 4th Street. He and his partner began following a red Nissan, which had been blocking the victims' vehicle from behind. The red Nissan contained two occupants, defendant and a female Hispanic.

A chase ensued, with travel going through downtown Los Angeles. Defendant drove through two or three red lights, traveled at speeds of 50 to 60 miles per hour and passed cars on the left in the center divider. The Nissan had paper over the rear license plate, preventing Officer Humphris from reading the license number. Officer Humphris saw the Nissan almost cause a traffic accident while negotiating a dangerous left turn. Officer Humphris and his partner were in a brown, dual-purpose police car, an unmarked car with a red light in front facing forward and equipped with a siren. The red light and siren were activated during the pursuit.

Due to the traffic and pedestrians on the streets, Officer Humphris and his partner dropped back and allowed the police helicopter take over the chase. The police helicopter had its siren on during the pursuit. The red Nissan eventually stopped and defendant and the female Hispanic exited. Defendant and the female were taken into custody shortly thereafter.[1]

## B. *Defense Evidence*

Defendant was driving home on the Interstate 5 freeway near the 4th Street exit when he came upon an accident on the off-ramp. A car in front of defendant backed up into defendant's car. People from one of the cars in the accident exited the vehicle, and defendant thought there was going to be a fight. Defendant drove off with the other cars still at the scene of the accident.

Defendant was driving on 4th Street when he realized he was being followed by the police. Defendant thought the police were following him because of the accident. Defendant did not stop because he had unpaid tickets and warrants. He also did not have a license or insurance. Defendant drove for about five minutes before stopping and being arrested. Defendant gave the police a false name and address, and told the police he fled because he thought he had run a red light and the car was not his. He later told the police about the accident on the off-ramp.

---

[1] Although both Officer Humphris and the police helicopter observer testified defendant was in possession of a gun during the robberies and while defendant fled on foot, no gun was recovered and the jury was unable to reach unanimous verdicts on allegations defendant personally used a firearm within the meaning of Penal Code section 12022.5, subdivision (a).

## III. Discussion

### A. *Substantial Evidence Supports Defendant's Conviction for Felony Evading an Officer Under Vehicle Code Section 2800.2*

 Defendant's first contention is that there was insufficient evidence to support his conviction in count 3 for felony evading an officer because the police vehicle giving chase was not "distinctively marked." The police car in question was a brown, dual-purpose vehicle equipped with a siren and a red light mounted on the windshield pointing forward. We conclude substantial evidence supports the jury's finding under the facts in this case.

Vehicle Code section 2800.2 elevates a misdemeanor violation of evading an officer under Vehicle Code section 2800.1 to a felony if the vehicle is "driven in a willful or wanton disregard for the safety of persons or property." By its terms, Vehicle Code section 2800.2 incorporates the following elements of Vehicle Code section 2800.1 into the felony statute:

"(a) Any person who, while operating a motor vehicle and with the intent to evade, willfully flees or otherwise attempts to elude a pursuing peace officer's motor vehicle, is guilty of a misdemeanor if all of the following conditions exist:

"(1) The peace officer's motor vehicle is exhibiting at least one lighted red lamp visible from the front and the person either sees or reasonably should have seen the lamp.

"(2) The peace officer's motor vehicle is sounding a siren as may be reasonably necessary.

"(3) The peace officer's motor vehicle is distinctively marked.

"(4) The peace officer's motor vehicle is operated by a peace officer . . . and that peace officer is wearing a distinctive uniform."

The only issue in dispute in the instant appeal is the requirement that the vehicle be "distinctively marked." In *People* v. *Estrella* (1995) 31 Cal.App.4th 716, 722 [37 Cal.Rptr.2d 383], the court held that "[w]hile initial reaction to the term 'distinctively marked' may be to construe a requirement of insignia or logo, we note the absence of an express requirement of the same in [Vehicle Code] section 2800.1, thereby lending credence to a liberal (and less literal) interpretation of the term." (See also *People* v. *Mathews* (1998) 64 Cal.App.4th 485, 489 [75 Cal.Rptr.2d 289].) In dicta, the

court stated that a red light and siren, alone, are insufficient to distinctively mark a police vehicle for purposes of Vehicle Code section 2800.2. (*People v. Estrella, supra*, 31 Cal.App.4th at pp. 722-723.) "Accordingly, we adopt a commonsense approach to this question, one which looks at the indicia identified with the pursuit vehicle which are supplemental to a red light and siren, to ascertain whether a person fleeing is on reasonable notice that pursuit is by a peace officer. Stated somewhat differently, under [Vehicle Code] section 2800.1, does the person know or reasonably should know that a police vehicle is in pursuit?" (*Id.* at p. 723.)

In *Estrella*, an officer was in a 1983 Buick with "nothing distinctive about it to identify it as a police vehicle." It had a light bar inside the windshield on the passenger side. The light bar was eighteen inches long and four or five inches from top to bottom. It had a steady red light in the middle, a flashing blue light on one side, and a flashing red light on the other. The siren was not visible from the outside. It had alternating headlights (called "wigwag" lights) and warning lights to the rear. (*People v. Estrella, supra*, 31 Cal.App.4th at pp. 719-720.) In concluding the vehicle was distinctively marked, the court held: "However, although we agree that a red light and siren alone do not distinctively mark a police vehicle, we conclude that under the circumstances presented here, the additional 'devices' [citation] consisting of wigwag lights and the flashing blue and clear lights adequately identified [the officer's] vehicle as a police vehicle. We find it incredible to believe or even seriously argue that a reasonable person, upon seeing a vehicle in pursuit with flashing red and blue lights, wigwag headlights and hearing a siren, would have any doubt that said pursuit vehicle was a police vehicle." (*Id.* at p. 723, fn. omitted.)

The other case to consider the issue of what constitutes a distinctively marked vehicle is *Mathews*. In *Mathews*, the police drove an unmarked vehicle equipped with a siren, a red light mounted on the front dashboard and headlights that flashed in an alternating "wigwag" fashion. (*People v. Mathews, supra*, 64 Cal.App.4th at p. 487.) After agreeing with *Estrella* that there is no requirement that any logo or insignia be on the vehicle, the court upheld the conviction, adopting the "commonsense approach of *Estrella*," while concluding that "red lights, siren, and wigwag headlights were sufficiently distinctive markings to inform any reasonable person he was being pursued by a law enforcement vehicle." (*Id.* at pp. 489-490.)

The issue presented here requires that we either follow the dicta in *Estrella* that a red light and siren are insufficient to distinctively mark a police vehicle, or extend *Mathews* to a case where there are no wigwag headlights, only the red lamp and siren. We respectfully decline to follow the

dicta in *Estrella*, and instead conclude the appropriate test is whether there is substantial evidence in the record from which a reasonable trier of fact could conclude the red light and siren were sufficient "distinctive markings to inform any reasonable person he was being pursued by a law enforcement vehicle." (*People* v. *Mathews, supra,* 64 Cal.App.4th at p. 490.)

In construing Vehicle Code sections 2800.1 and 2800.2, the court in *Estrella* was concerned that an interpretation of the statutes allowing for conviction upon a finding a police vehicle was distinctively marked based on the presence of a red light and siren would render the requirement that the vehicle be "distinctively marked" mere surplusage. "Therefore, to construe 'distinctively marked' to mean simply exhibiting a red light and sounding a siren would result in [Vehicle Code] section 2800.1, subdivision (c) (requiring the vehicle to be 'distinctively marked') being considered as mere surplusage." (*People* v. *Estrella, supra,* 31 Cal.App.4th at p. 723.)

We respectfully disagree with the *Estrella* concern that the "distinctively marked" requirement would be rendered "mere surplusage" if the red lamp and siren could be used as the basis for a finding the vehicle was distinctively marked. The requirements are separate elements, and a reasonable trier of fact which found the red lamp was lighted and siren was on *may or may not* also conclude under the circumstances of a particular case that the red lamp and siren satisfy the distinctive marking element.

We are unwilling to conclude, *as a matter of law,* that a lighted red lamp and sounded siren on an unmarked police car can never constitute substantial evidence of a symbol or device that distinctively marks it as a police vehicle. In our opinion, the appropriate approach is to apply the traditional substantial evidence test where the sufficiency of the evidence is challenged on appeal, rather than ruling as a matter of law that a particular set of facts can never constitute substantial evidence. (See *People* v. *Cuevas* (1995) 12 Cal.4th 252 [48 Cal.Rptr.2d 135, 906 P.2d 1290] [adopting the substantial evidence rule in assessing the sufficiency of an out-of-court identification to uphold a conviction, overruling the holding of *People* v. *Gould* (1960) 54 Cal.2d 621 [7 Cal.Rptr. 273, 354 P.2d 865]].) Depending on the totality of circumstances, there is no reason to conclude, as a matter of law, that a lighted red lamp and siren reasonably sounded cannot serve to identify an unmarked car as a distinctively marked police vehicle.

Under the substantial evidence rule, a judgment must be supported by substantial evidence in light of the whole record. (*People* v. *Jones* (1990)

51 Cal.3d 294, 313 [270 Cal.Rptr. 611, 792 P.2d 643]; *People* v. *Johnson* (1980) 26 Cal.3d 557, 577-578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) The "whole record" includes " 'the entire picture of the defendant put before the jury.' " (*People* v. *Johnson, supra,* 26 Cal.3d at p. 577.) ▮ A review of the whole record in the instant case reveals the necessary substantial evidence to support the judgment.

The record reflects that Officer Humphris saw the robberies take place, as well as the vehicles involved. He and his partner followed the car driven by defendant. The officers' car was unmarked, but did display the lighted red lamp and sounded its siren. The red lamp and siren are features which a reasonable trier of fact could conclude are not routinely present on civilian vehicles, and which distinctly mark the car as a police vehicle. Indeed, it would be highly unusual for a civilian car to have these features. Any doubt that the police vehicle was sufficiently marked to allow a reasonable person to identify it as a law enforcement vehicle is answered in defendant's own testimony.[2] Defendant testified he knew the police were following him and he didn't stop because he had outstanding tickets and warrants. Clearly there was something sufficiently distinctive in the devices of the police vehicle which allowed defendant to conclude he was being chased by the police, rather than by rogue civilians. The jury's conclusion was certainly as reasonable as the conclusion reached by defendant.

We do not suggest the jury was required in this case to find the police vehicle was distinctively marked. Instead, we return to the *Estrella* phrasing of the ultimate question: "Stated somewhat differently, under [Vehicle Code] section 2800.1, does the person know or reasonably should know that a police vehicle is in pursuit?" (*People* v. *Estrella, supra,* 31 Cal.App.4th at p. 723.) Under the substantial evidence rule, the answer to the *Estrella* question in the instant case is "yes."

B. *Consecutive Sentences Were Property Imposed in Counts 2 and 3\**

. . . . . . . . . . . . . . . . . . . . . .

---

[2]In *People* v. *Johnson, supra,* 26 Cal.3d at page 579, our Supreme Court found the defendant's trial testimony to be corroborative of the prosecution case in upholding the sufficiency of the evidence on appeal.

\*See footnote, *ante,* page 956.

## IV. DISPOSITION

The judgment is affirmed.

Turner, P. J., and Grignon, J., concurred.