Filed 8/26/15  P. v. Terrell CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E061310 |
| v. | (Super.Ct.No. RIF1301728) |
| JAMES CLIFFORD TERRELL, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Mac R. Fisher, Judge.

Affirmed.

Laurel M. Nelson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina, and Annie Featherman Fraser, Deputy Attorneys General, for Plaintiff and Respondent.

1

I

INTRODUCTION

Defendant James Clifford Terrell appeals from judgment entered following a jury

conviction for evading a peace officer with wanton disregard for safety (Veh. Code,

§ 2800.2;[1] count 1). Defendant admitted three prison priors (Pen. Code, § 667.5, subd.

(b)) and was sentenced to five years in state prison.

Defendant contends there was insufficient evidence to support his conviction for

evading a peace officer because the officer pursuing defendant did not activate his siren

during the entire chase. Defendant also contends he was prejudiced by the trial court

erroneously admitting evidence of a prior 2002 incident involving evading law

enforcement (§ 2800.2, subd. (a)). Defendant further argues the trial court incorrectly

sentenced defendant to state prison instead of a local facility under Penal Code section

1170, subdivision (h). We reject defendant's contentions and affirm the judgment.

II

FACTS

On March 2, 2013, about 2:00 a.m., Sheriff Deputy Mauricio Tavarez saw

defendant's white Camaro speeding in the area of Cajalco Road and Clark Street, in

Mead Valley. Tavarez did not pull the Camaro over because he could not catch up to it.

---

[1] Unless otherwise noted, all statutory references are to the Vehicle Code.

About 9:00 a.m. that same morning, Sheriff Deputy Christopher Angelo saw the Camaro driven by defendant. Angelo followed it, with one car between Angelo and the Camaro. When Angelo pulled behind defendant, defendant accelerated to over 60 miles per hour, in a 45 mile per hour zone. In an unsuccessful attempt to catch up with defendant, Angelo reached 70 miles per hour.

Defendant stopped at a stop sign at an intersection and turned left on Cajalco Road, which had a lot of traffic. Angelo followed 50 to 100 yards behind defendant, with five or six cars between them. Travelling about 30 miles per hour, defendant turned right onto Seaton Avenue. Defendant then accelerated to 70 to 80 miles per hour.

When defendant was about 50 yards ahead of Angelo, Angelo activated his overhead red and blue flashing lights and advised dispatch he was pursuing defendant. Defendant pulled away, driving 80 to 100 miles per hour. He braked slightly at an intersection at Harvill Avenue, as he ran through a stop sign and continued on Harvill Avenue. Defendant continued pulling away from Angelo at 50 to 60 miles per hour.

When defendant approached the intersection of Harvill Avenue and Cajalco Road, he was travelling at 85 to 90 miles per hour. Defendant ran a red light at the intersection. Because the intersection was busy, with a stoplight, Angelo slowed down at the intersection and activated his siren as he went through the intersection. At that point, Angelo had lost sight of defendant, ended the pursuit, and advised dispatch of defendant's direction of travel.

3

Angelo drove about two and a half miles to a residence defendant was known to frequent on Brown Street. The Camaro was parked in front of the residence. Angelo called for backup. Deputy sheriff Matthew Saidleman responded with his police dog, Arras. Arras found defendant behind a partition in an abandoned motor home on the property.

Angelo testified he did not believe it was reasonable to use his siren during the entire pursuit. Angelo believed it was unnecessary because defendant was too far ahead and would not hear the siren. Also there was no pedestrian or vehicular traffic on the route. Angelo believed defendant was aware Angelo was pursuing him based on defendant speeding up several times. Angelo did not know if a boom box obstructed defendant's view out his rear window, preventing defendant from seeing out the rear window Angelo's flashing lights. Angelo testified that if the entire rear car window was blocked, when the driver looked in the rearview mirror, he would not be able to see anything out the back window.

Angelo testified he had pulled over more than 100 vehicles, mostly for traffic violations. He had used only his red and blue lights. Use of the siren was not necessary. Deputies in his department were trained they did not need to use a siren to pull drivers over. During 15 to 20 pursuits, Angelo had used a siren about 80 percent of the time.

Sheriff Deputy Kamal Kabbara heard radio broadcasts of Angelo's pursuit of the Camaro. Around 9:00 a.m., Kabbara saw the Camaro approach. Kabbara could see the driver, who Kabbara identified in court as defendant. Defendant was not traveling fast as

4

he approached Kabbara but, when defendant got to Kabbara and Kabbara slowed down in the process of making a u-turn, defendant sped away at around 70 to 80 miles per hour. Kabbara attempted to follow defendant but lost sight of him. Kabbara went to the residence on Brown street and searched the Camaro after defendant was arrested. There was a boom box in the Camaro. Kabbara did not recall whether it was in the back window or below.

Defendant's son, Jameson Terrell (Jameson), testified his mother owned the Camaro. The windows were tinted. Before March 2, 2013, Jameson installed a speaker box in the Camaro. It blocked the entire back window. The back seat was folded down and the speaker box was secured with screws on top of the back seat. You could not see anything out the back window but you could still see out the passenger windows. You could also use the side view mirrors on both sides of the car to see behind the car.

III

SUFFICIENCY OF EVIDENCE

Defendant contends there was insufficient evidence to support his conviction for evading a peace officer in violation of section 2800.2. Defendant argues the prosecution failed to prove an essential element of the offense: activation of the officer's motor vehicle siren during pursuit of defendant.

"In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the

5

defendant guilty beyond a reasonable doubt.  [Citations.]  Reversal on this ground is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].'  [Citations.]"  (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

Under section 2800.2, it is a crime "for a motorist to flee from, or attempt to elude, a pursuing peace officer's vehicle in 'violation of Section 2800.1' and 'in a willful or wanton disregard for the safety of persons or property.'"  (*People v. Hudson* (2006) 38 Cal.4th 1002, 1007.)  Section 2800.2, subdivision (a), provides:  "If a person flees or attempts to elude a pursuing peace officer in violation of Section 2800.1 and the pursued vehicle is driven in a willful or wanton disregard for the safety of persons or property, the person driving the vehicle, upon conviction, shall be punished . . . ."

Substantial evidence of all the elements set forth in section 2800.1, subdivision (a), must be established in order to prove a violation of section 2800.2.  Section 2800.1, subdivision (a), provides in relevant part:  "'Any person who, while operating a motor vehicle and with the intent to evade, willfully flees or otherwise attempts to elude a pursuing peace officer's motor vehicle, is guilty of a misdemeanor . . . if all of the following conditions exist:  [¶]  (1)  The peace officer's motor vehicle is exhibiting at least one lighted red lamp visible from the front and the person either sees or reasonably should have seen the lamp.  [¶]  (2) The peace officer's motor vehicle is sounding a siren as may be reasonably necessary.'  'The obvious purpose of the light and sound

6

requirements of the pursuing vehicle is to inform a person that a peace officer's vehicle is in pursuit.'" (*People v. Copass* (2009) 180 Cal.App.4th 37, 41.)

Unlike the mandatory requirement under section 2800.1, subdivision (a)(1), that the peace officer exhibit "at least one lighted red lamp visible from the front" (*People v. Acevedo* (2003) 105 Cal.App.4th 195, 199-200; *People v. Brown* (1989) 216 Cal.App.3d 596, 600), the plain language of subdivision (a)(2) indicates the prevailing factual circumstances dictate whether sounding a siren is required to find a person guilty of evading a peace officer. Because the language is clear and unambiguous, we follow the plain meaning of the statute. (*People v. Canty* (2004) 32 Cal.4th 1266, 1276.)

As this court concluded in the context of defining a "distinctively marked" vehicle under section 2800.1, subdivision (a)(3), the commonsense approach to determining whether the siren element is met is to determine "whether a person fleeing is on reasonable notice that pursuit is by a peace officer." (*People v. Estrella* (1995) 31 Cal.App.4th 716, 723.) "Stated somewhat differently, under section 2800.1, does the person know or reasonably should know that a police vehicle is in pursuit?" (*Ibid.*; see *People v. Chicanti* (1999) 71 Cal.App.4th 956, 963; *People v. Mathews* (1998) 64 Cal.App.4th 485, 489.)

Here, there was substantial evidence the siren was not reasonably necessary throughout the entirety of Angelo's pursuit of defendant. In the absence of the siren, defendant was on reasonable notice that he was being pursued by a peace officer. Angelo was driving a marked patrol car with flashing overhead lights. Even though the

Camaro's rear window may have been blocked by a speaker box and the windows were tinted, Angelo's marked patrol car and overhead flashing lights could be viewed from defendant's side view mirrors. Furthermore, defendant's response to Deputies Angelo and Kabbara approaching the Camaro indicates defendant was well aware he was being pursued by peace officers. When the officers approached defendant, he rapidly accelerated up to 100 miles per hour on surface streets, ran a stop sign, ran a red light, and several times avoided being pulled over. On several occasions, he successfully sped away, losing the officers who were pursuing him. In addition, his conduct of hiding out in an abandoned motor home, behind a partition, after being pursued by Angelo, supports a reasonable finding that defendant was intentionally evading apprehension.

Defendant relies on *People v. Hudson* (2006) 38 Cal.4th 1002 for the proposition activation of a siren is a required element of a section 2800.1, subdivision (a), offense (evading an officer travelling in a motor vehicle). *Hudson* is not on point because the issue addressed in *Hudson* was whether an unmarked patrol car was "distinctively marked" within the meaning of section 2800.1, subdivision (a)(3). The car in *Hudson* was unmarked with a forward-facing interior red light under the rearview mirror, a blue amber blinking light in the back, and a siren. The *Hudson* court held lights and siren were not sufficient to satisfy the "distinctively marked" motor vehicle element: "[T]he statutory phrase 'distinctively marked' requires that, in addition to the red light and siren, the peace officer's vehicle must have features that distinguish it from vehicles not used for law enforcement." (*Id.* at p. 1006.)

8

The court in *Hudson* explains that section 2800.1, subdivision (a), "requires four distinct elements, each of which must be present: (1) a red light, (2) a siren, (3) a distinctively marked vehicle, and (4) a peace officer in a distinctive uniform." (*People v. Hudson, supra,* 38 Cal.4th at p. 1008.) While a siren is included as an element in section 2800.1, subdivision (a), the statute states in plain language that activation of the siren is only required when "reasonably necessary." (§ 2800.1, subd. (a)(2).) The court in *Hudson* did not address the meaning of the siren element stated in subdivision (a)(2) of section 2800.1. *Hudson* only discussed the meaning of the separate element, "distinctively marked vehicle," stated in subdivision (a)(3).

*Hudson* therefore is not dispositive in the instant case. Angelo pursued defendant in a marked patrol car and there is substantial evidence that use of the siren was not reasonably necessary, other than when Officer Angelo activated it while proceeding through a congested intersection. Angelo testified he believed use of the siren during his pursuit of defendant was not reasonable necessary to notify defendant he was being pursued. Angelo believed the siren was only reasonably necessary when proceeding through a congested, heavily travelled intersection at the end of the pursuit.

Defendant argues Angelo testified he did not activate his siren at all. Although Angelo initially stated he did not use his siren, later he explained that he did not use it during the pursuit to notify defendant. He only activated his siren at the end of the pursuit for public safety purposes, when defendant was too far away to hear the siren and Angelo had lost defendant at that point. Because there was substantial evidence

9

establishing that it was not reasonably necessary to activate Angelo's siren while pursuing defendant, other than when passing through the intersection at the end of the pursuit, we reject defendant's insufficiency of evidence challenge to his conviction for evading an officer.

IV

ADMISSIBILITY OF A PRIOR OFFENSE

Defendant contends the trial court committed prejudicial error when it admitted testimony describing a prior incident in which defendant evaded law enforcement in 2002.

Defendant filed a pretrial motion in limine to exclude prior acts, including the 2002 incident which resulted in a conviction in 2004 for recklessly evading a peace officer (§ 2800.2). The 2002 incident involved defendant driving a Camaro without the permission of the owner. Both a siren and flashing lights were used during the pursuit as defendant sped away. In the trial court, defendant argued that the 2002 incident and the charged offense were highly dissimilar and therefore evidence of the 2002 offense was inadmissible as irrelevant propensity evidence under Evidence Code section 1101, subdivision (b).

The prosecutor filed a motion in limine requesting admission of evidence of the 2002 prior incident. During a hearing on the motions in limine, the trial court suggested that before testimony regarding the prior was introduced, the court would conduct a Evidence Code section 402 hearing (402 hearing) to determine whether to admit evidence

10

of the prior incident. The trial court stated that, before the officer who pursued defendant in 2002 testified, the officer was to be questioned outside the presence of the jury. The trial court would at that time determine whether to allow evidence of the 2002 incident at trial.

Later in the hearing on the parties' motions in limine, the court and counsel again discussed the admissibility of Sheriff's Deputy Michael Callahan's testimony regarding the 2002 offense. Defense counsel objected to the testimony on the ground the 2002 offense was dissimilar to the charged offense. The People argued the two offenses were extremely similar. The trial court ruled the evidence of the 2002 offense would be admitted but evidence of the conviction was inadmissible.

During the trial, Callahan briefly testified in the presence of the jury that while on patrol in January 2002, at around midnight, in Mead Valley, he pulled over to the side of the road to assist a large dog that had been hit. Callahan turned on his back emergency flashing lights and was tending to the dog in the middle of the road when a Camaro passed Callahan. Callahan got back in his car and attempted to pull over the speeding Camaro. Callahan activated his red and blue flashing lights on top of his patrol car. He then turned on his siren and told dispatch he was attempting to stop the Camaro. The Camaro was speeding at over 100 miles per hour on a residential street. The speed limit was 45 miles per hour. The Camaro headlights were turned off. The car went through three four-way stop

11

intersections without stopping. Callahan was unable to keep up with the Camaro. Callahan activated his siren for safety reasons, to notify other drivers to get out of the the way of the pursuit and to notify the driver of the Camaro that he was being pursued. The Camaro escaped Callahan's pursuit. Callahan never caught the driver. Callahan testified he saw the driver of the Camaro but did not identify defendant during the trial as the driver.

During cross-examination by defense counsel, Callahan stated it was not the sheriff department's policy to use a siren and flashing lights whenever pulling someone over. During redirect examination, Callahan stated the policy was to activate the flashing lights when conducting a traffic stop, to let the driver know he is being requested to pull over. The policy is to use a siren when it is reasonably necessary, such as when necessary to get the attention of the driver for a traffic stop. If the driver does not stop, the siren remains on during the pursuit. The siren is also used to notify the public of the pursuit.

At the conclusion of the trial, out of the presence of the jurors, the trial court stated that Callahan's testimony had been admitted under Evidence Code section 1101, subdivision (b), but Callahan never identified defendant as the driver of the Camaro in 2002. The parties agreed that it was therefore appropriate for the trial court to strike Callahan's testimony and order the jury not to consider it, based on the lack of identification. The trial court further ordered withdrawn jury instruction 375, regarding

12

evidence of an uncharged offense, because the court had ordered stricken Callahan's testimony.

The trial court and parties concluded there was no need for the instruction because the trial court had ordered stricken Callahan's testimony regarding the 2002 offense. The parties further agreed to the trial court instructing the jury that Callahan's testimony was stricken from the record and the jury was ordered to disregard his testimony and not consider it for any reason. The trial court instructed the jury accordingly.

Defendant argues that, even though the trial court ordered Callahan's testimony stricken, the evidence was highly prejudicial as inadmissible propensity evidence under Evidence Code section 1101, subdivision (b). Citing *People v. Hendrix* (2013) 214 Cal.App.4th 216, 244, defendant asserts that substantial prejudicial effect is inherent in other-offense evidence. Furthermore, evidence of the 2002 offense was not sufficiently similar to be relevant. The 2002 offense involved a different vehicle, driven late at night. There was no evidence the vehicle had tinted windows or anything was obstructing the driver's rear view. In addition, during the 2002 incident, the officer activated both his flashing lights and siren during the pursuit.

Defendant argues that, although the trial court instructed the jury not to consider the 2002 evidence, the bell could not be unrung. (*Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1593.) " " "The usual purpose of

13

motions *in limine* is to preclude the presentation of evidence deemed inadmissible and prejudicial by the moving party. A typical order *in limine* excludes the challenged evidence and directs counsel, parties, and witnesses not to refer to the excluded matters during trial. [Citation.] 'The advantage of such motions is to avoid the obviously futile attempt to "unring the bell" in the event a motion to strike is granted in the proceedings before the jury.' [Citation.]"' [Citation.]" (*Id.* at p. 1593.)

In the instant case, the trial court appropriately ordered stricken Callahan's testimony and instructed the jury not to consider it. Allowing Callahan's testimony initially does not constitute prejudicial error because, in addition to the trial court instructing the jury not to consider the evidence, there was overwhelming evidence defendant committed the charged offense. The trial court recognized that Callahan's testimony regarding the 2002 incident was irrelevant because there was no evidence identifying defendant as the driver. This did not become apparent until after Callahan testified. Therefore defendant has not established any error on the part of the trial court in initially allowing Callahan to testify regarding a prior offense. Defendant does not object to the manner in which the trial court responded upon hearing Callahan's testimony and determining it was irrelevant. Furthermore, defendant did not request a mistrial or new trial based on Callahan's testimony which the trial court ordered stricken.

Even if the trial court abused its discretion in allowing Callahan to testify, defendant has not established prejudicial error. The trial court ordered Callahan's testimony stricken and appropriately instructed the jury not to consider it. There is no

14

reason to believe that the jury was unable to follow this instruction. Juries are presumed to follow the instructions given. (*People v. Osband* (1996) 13 Cal.4th 622, 714; *People v. Van Winkle* (1999) 75 Cal.App.4th 133, 148.)

Defendant argues that although the trial court instructed the jury not to consider Callahan's testimony, it was too late. "The bell could not be unrung." But even though the jury heard the testimony, it is not reasonably probable the jury would have decided the case any differently had Callahan not testified. Defendant contends there was not overwhelming evidence of guilty, since it was unclear as to whether defendant knew he was being pursued. Defendant argues Angelo's overhead flashing lights were not as visible because it was daytime. Also, the terrain was hilly, which would have obscured Angelo's lights, and there were curves and turns in defendant's route, which would have interfered with visibility. Angelo acknowledged he frequently lost sight of the Camaro and could not see defendant through the Camaro's tinted windows.

Even though defendant's view out the rear window may have been blocked by a speaker box, the windows were tinted, and it was daytime, this did not prevent defendant from viewing Angelo pursuing him. Defendant's son testified a driver could still see out the Camaro's passenger windows and could also use the side view mirrors on both sides of the car to see behind the car.

There was also substantial evidence defendant was aware Angelo was following him, even though Angelo did not activate his siren. Angelo testified that when he pulled behind defendant's white Camaro about 9:00 a.m., defendant accelerated to over 60 miles

15

per hour in a 45 mile per hour zone. This indicated defendant had observed Angelo's patrol car and knew of his presence. After Angelo continued following defendant 50 to 100 yards behind him on Cajalco Road, with five or six cars between them, defendant again accelerated when capable of doing so, from 30 miles per hour to 70 to 80 miles per hour.

When Angelo activated his overhead red and blue flashing lights, about 50 yards behind defendant, defendant again pulled away, accelerating to 80 to 100 miles per hour. This evidence indicates defendant saw Angelo's flashing lights and was aware Angelo was pursuing him. During the chase, defendant ran a stop sign and stop light. He continued to pull away from Angelo whenever Angelo approached him. Eventually Angelo lost sight of defendant, ending the pursuit, just as the other pursuits of defendant had ended. A little later, a police dog found defendant in the nearby area hiding behind a partition in an abandoned motor home on the property. This evidence also indicated defendant was well aware he had been pursued. Angelo testified that, based on defendant speeding up several times, Angelo believed defendant was aware Angelo was pursuing him.

Based on the overwhelming evidence establishing that defendant knowingly evaded pursuit by a peace officer, we conclude Callahan's testimony does not constitute prejudicial error. It is not reasonably probable the outcome in this case would have been any different had Callahan not testified. (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

16

V

SENTENCING UNDER THE REALIGNMENT ACT

Defendant contends the trial court erred in assuming he did not qualify for sentencing in a community facility under the Realignment Act (Pen. Code, § 17.5, subd. (a)).

During defendant's sentencing hearing on June 6, 2014, the trial court sentenced defendant for evading a peace officer (§ 2800.2) and for having three priors.  The three priors, which defendant admitted, included (1) a 2004 conviction for evading a peace officer (§ 2800.2); (2) a 2007 conviction for spousal abuse (Pen. Code, § 273.5); and (3) a 2010 conviction for possession of a controlled substance for sale (Health & Saf. Code, § 11378).

The trial court stated during the sentencing hearing that he had reviewed the probation officer's recommendations and the parties' sentencing briefs.  The probation report stated regarding Penal Code section 1170, subdivision (h):  "Although the offense in Count 1 is non-serious, non-violent, and non-registerable, the defendant is ineligible to serve any period of incarceration in the county jail, pursuant to 1170(h), because Penal Code Section 30305(a), does not stipulate the sentence can be served pursuant to 1170(h).[2]  As such, imprisonment must be served in state prison, should the Court

_____

   **2**  The probation officer's reference to Penal Code section 30305, subdivision (a), appears to be inadvertent clerical error.  Penal Code section 30305, subdivision (a)(1),

*[footnote continued on next page]*

17

choose to deny probation, and impose and execute a sentence." The probation officer further stated that probation should be denied because the case was not an unusual case under Penal Code section 1203, subdivision (e)(4). It was recommended the court sentence defendant to state prison.

As recommended, the court denied probation, stating that it declined "the opportunity to find this an unusual case." The court proposed imposing an aggregate sentence of five years, consisting of the middle term of two years on the section 2800.2 conviction, plus one year for each of the three priors. Defense counsel argued defendant should receive probation because the case was unusual. Defense counsel asserted that defendant had been trying to change his life and had stayed out of trouble the majority of the time after his last release.

The court rejected defense counsel's request, noting that, although no one was injured, defendant's offense subjected the officer, defendant, and innocent bystanders to serious harm. The court found the case was not unusual, denied probation, and concluded sentencing was unavailable under Penal Code section 1170, subdivision (h). The trial court imposed the originally proposed sentence of five years in state prison.

---

*[footnote continued from previous page]*
*[footnote continued from previous page]*
states: "No person prohibited from owning or possessing a firearm . . . shall own, possess, or have under custody or control, any ammunition or reloaded ammunition." Penal Code section 30305, subdivision (a), was not at issue in this case. Most likely the probation officer intended to refer to section 2800.2, rather than Penal Code section 30305.

Defendant argues he qualified for sentencing under the Realignment Act, which directs that those subject to the Realignment Act be sentenced to incarceration in county jail. (Pen. Code, §§ 17.5, subd. (a), 1170, subd. (h)(1), (2).) The People disagree. Citing *People v. Guillen* (2013) 212 Cal.App.4th 992, 995, the People argue a section 2800.2 offense is not subject to the Realignment Act because the statute expressly states that a felony offense under section 2800.2 shall be punished by imprisonment in state prison.

The Realignment Act generally provides that low-level felons who do not have prior convictions for serious, violent, or sex offenses, are eligible to serve their terms of imprisonment in local custody rather than state prison. (Pen. Code, § 17.5, subd. (a); *People v. Cruz* (2012) 207 Cal.App.4th 664, 671.) If the statute for the charged offense specifies the defendant shall be punished by imprisonment pursuant to Penal Code section 1170, subdivision (h), without specifying a particular term of punishment, the crime is "punishable by a term of imprisonment in a county jail for 16 months, or two or three years." (*Id.*, subd. (h)(1).) "If the penal statute calls for punishment pursuant to section 1170, subdivision (h), and specifies a term, the offense is 'punishable by imprisonment in a county jail for the term described in the underlying offense' (*id.,* subd. (h)(2)), even when the sentence exceeds the 16-month, two-year, or three-year triad." (*People v. Cruz, supra,* 207 Cal.App.4th at p. 671.)

In *People v. Guillen, supra,* 212 Cal.App.4th 992, the defendant was convicted of driving under the influence of alcohol. The defendant admitted having a prior felony

conviction and was sentenced to state prison. The court in *Guillen* held that the defendant was not eligible for sentencing under the Realignment Act. (*Id.* at p. 995.)

Here, as in *Guillen*, the statute under which defendant was convicted (§ 2800.2, subd. (a)) is a Vehicle Code statute and does not specify a sentencing term, does not refer to imprisonment under Penal Code section 1170, subdivision (h), and states that punishment shall be either imprisonment in the state prison or confinement in the county jail for not more than one year. The court in *Guillen* explained the defendant was statutorily ineligible to serve his sentence in county jail pursuant to realignment legislation: "'As part of the Realignment Legislation, the statutes defining many substantive offenses were amended to provide for felony punishment under [Penal Code section] 1170(h). [Citations.] However, the statutes defining many other substantive offenses provide that the sentence must be served in state prison. [Citations.]' Thus, by failing to include language in [Vehicle Code] section 23550.5[**3**] authorizing punishment pursuant to Penal Code section 1170, subdivision (h), the Legislature intentionally excluded defendants convicted of that offense from eligibility for a county jail sentence." (*People v. Guillen, supra,* 212 Cal.App.4th at pp. 995-996.)

Likewise, here, the language in section 2800.2, subdivision (a), excludes defendants convicted of violating section 2800.2 from eligibility for punishment under

---

**3** This statute states the offense and punishment for multiple driving under the influence violations within 10 years.

the Realignment Act because the statute requires the sentence be served in state prison and fails to include any language authorizing punishment under Penal Code section 1170, subdivision (h).  (*People v. Guillen, supra,* 212 Cal.App.4th at pp. 995-996.)  Since the Legislature did not amend section 2800.2 to provide that the felony offense is punishable under Penal Code section 1170, subdivision (h), sentencing under the Realignment Act is inapplicable and defendant's sentence in state prison is proper.

## VI

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON

J.

We concur:

McKINSTER

       Acting P. J.

KING

      J.